**Phillip BUTTON, Plaintiff–Appellant,**

**v.**

**Sandra KIBBY–BROWN and Steven L. McEvers,\* Defendants–Appellees.**

No. 97–2832.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1998.

Decided June 26, 1998.

\* Although this defendant's name appears as "Stephen L. McEvers" on our docket, the pleadings, as well as the briefs filed with this court and opinions from the district court use "Steven L. McEvers." For consistency's sake, we will use the same spelling as the district court.

James P. Baker, Springfield, IL, Mark S. Demorest (argued), Hainer, Demorest & Berman, Troy, MI, for Plaintiff-Appellant.

Jerald S. Post (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendants-Appellees.

Before POSNER, Chief Judge, and CUMMINGS and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Phillip Button brought a claim under 42 U.S.C. § 1983, alleging that defendants Sandra Kibby–Brown and Steven McEvers violated his rights under the First Amendment. At the close of trial, the district court granted Kibby–Brown's and McEvers' motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a). Button appeals this decision; we affirm.

## I. HISTORY

The Illinois Department of Corrections has employed Reverend Phillip Button as a chaplain at the Jacksonville Correction Center ("the Center") in Jacksonville, Illinois, since 1984. Defendant Sandra Kibby–Brown is employed as the Assistant Warden of Programs at the Center and is Button's immediate supervisor. Defendant Steven McEvers is the Warden at the Center and is Kibby–Brown's supervisor. Marjorie Brown is the Deputy Director of Community Services and is outside Button's chain of command.

Button's job duties include counseling inmates and visiting inmates in the segregation unit daily. In October 1991, Button met inmate Michael Shannon. Shannon is a "circuit rider," an inmate who is permanently held in segregation and frequently transferred from one prison facility to another. Button visited Shannon often and counseled him on religion. During these visits, Button discovered that Shannon was illiterate.

Shannon had access to a television set and learned of the *Hooked on Phonics* educational program. Shannon requested that he be allowed to use these materials to assist him in learning to read. Kibby–Brown and Button discussed Shannon's request and decided that Button would contact the publisher of *Hooked on Phonics*, Gateway Educational

Products, Ltd., to ask them to donate the materials. Button subsequently called Gateway and wrote a follow-up letter. In response, Gateway donated the program and asked that it be given a progress report on inmates using the materials. A second letter offered direction to Button on the use of the program and asked that he track Shannon's progress for the first 30 to 90 days of use.

Meanwhile, Kibby–Brown asked Warden McEvers whether Button could teach Shannon to read using the donated *Hooked on Phonics* materials. McEvers denied this request, suggesting that an educator would be a more appropriate choice. Kibby–Brown communicated this decision to Button, who expressed his displeasure at this outcome.

Thereafter, Button and Deputy Director Brown attended a meeting together. After the close of the meeting Button asked Brown if he could speak to her privately. Button testified that he told Brown that he had received materials for use with inmate Shannon and that Shannon was not going to be allowed to use them. Under these circumstances, Button thought the materials should be returned to Gateway. Brown testified that she did not remember the details of the conversation, but generally she remembered that Button had wanted to help an inmate in segregation, that his request had been denied, and that he wanted her opinion on the subject.

After this conversation with Button, Brown called Kibby–Brown. Although Brown testified that she did not remember the exact conversation, she remembered that she called concerning an inmate in segregation and educational materials. Kibby–Brown testified to the content of the conversation: Brown wanted to know whether she would reconsider allowing Button to tutor Shannon.

Kibby–Brown related that Warden McEvers had made the decision to use an educator and therefore Brown should direct her query to him. Brown did not contact McEvers.

Approximately two weeks later, Shannon received the *Hooked on Phonics* materials, and an educator was assigned to tutor Shannon. At the time of trial, Shannon still had the *Hooked on Phonics* materials.

Both McEvers and Kibby–Brown were angry with Button for going outside the chain of command to discuss the decision regarding the reading materials. Button alleges that McEvers and Kibby–Brown retaliated against him for his conversation with Brown by giving him poor performance reviews, written reprimands, and by discarding his application for a part-time secondary position with the State of Illinois. Button alleges that since these acts were in retaliation for exercise of his First Amendment rights, he deserves damages pursuant to 42 U.S.C. § 1983.

At the close of trial, defendants moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a), which the district court granted. The court found that Button had not established that his conversation with Brown involved a matter of public concern, and therefore it was not protected by the First Amendment. Button appeals this decision. [1]

## II. ANALYSIS

### A. *Standard of Review*

Fed.R.Civ.P. 50(a) provides:

If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on

1. This is the second time this case has come before us. In 1994, McEvers and Kibby–Brown moved to dismiss the case pursuant to Fed.R.Civ.P. 12(b)(6). The district court granted the motion. Button appealed. We affirmed the dismissal of Count I, but reversed the dismissal of the § 1983 claim. We found that Button had sufficiently alleged that his conversation involved issues of public concern, but noted that if discovery showed that the conversation "really involved nothing about the prison's potential liability, but rather concerned only personal matters, summary judgment may be appropriate." Order, *Button v. Kibby–Brown*, No. 94–2349, at 3, 1995 WL 272677, *2 (7th Cir. May 5, 1995). We emphasized that "[w]e ma[de] no comment on the merits of Button's suit, but simply reverse the district court's premature dismissal of Button's § 1983 claim." *Id.* Defendants later moved for summary judgment, which was denied by the district court because some factual disputes existed. The case proceeded to trial and is now before us on appeal from the Fed.R.Civ.P. 50(a) judgment.

that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

The district court granted defendants' Fed. R. Civ. P. 50(a) motion because it found Button's speech to Brown was not protected under the First Amendment. "Whether a public employee's speech has protected status presents a question of law determined in the first instance by the trial judge, whose decision we review *de novo.*" *Wright v. Illinois Dept. of Children & Family Servs.*, 40 F.3d 1492, 1499–1500 (7th Cir.1994); *see also Hammond Group, Ltd. v. Spalding & Evenflo Cos., Inc.*, 69 F.3d 845, 848 (7th Cir.1995); *Continental Bank v. Modansky*, 997 F.2d 309, 312 (7th Cir.1993). We consider the evidence in the light most favorable to the nonmoving party and will reverse the district court's judgment only if enough evidence exists to sustain a verdict in favor of the nonmoving party. *See Hammond Group*, 69 F.3d at 848; *Continental Bank*, 997 F.2d at 312.

### B. *Button's § 1983 Claim*

#### 1.

Button claims that McEvers and Kibby-Brown retaliated against him for exercising his First Amendment rights in violation of 42 U.S.C. § 1983. To establish a First Amendment retaliation claim, Button must show "(1) that speech [he] engaged in was constitutionally protected under the circumstances, ... and (2) that defendants retaliated against [him] because of that speech." *Gorman v. Robinson*, 977 F.2d 350, 354 (7th Cir.1992) (quotations omitted).

The threshold question in assessing whether Button's speech is constitutionally protected is whether it addressed a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If so, we must then address whether Button's interest in his expression is "outweighed by any injury the speech could cause to the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Waters v. Churchill*, 511 U.S. 661, 668, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (quotations omitted); *see also Pickering v. Board of Educ. of Township High Sch. Dist.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). We need not engage in this balancing act in the present case, however, because Button has not established that his speech addressed a matter of public concern.

■ To determine whether Button's speech addressed a matter of public concern, we consider "the content, form, and context ... as revealed by the whole record." *Connick*, 461 U.S. at 147–48. Our cases establish that of these three factors, content is the most important. *See Marshall v. Porter County Plan Comm'n*, 32 F.3d 1215, 1219 (7th Cir.1994); *Belk v. Town of Minocqua*, 858 F.2d 1258, 1264 (7th Cir.1988).

■ We will also inquire about the speaker's motive in making the statements at issue. *See Marshall*, 32 F.3d at 1219. The motive behind an employee's statements is a relevant, although not a dispositive, consideration. *See id.*; *Cliff v. Board of Sch. Comm'rs of Indianapolis*, 42 F.3d 403, 409 (7th Cir.1994). "Motive may play some part in determining whether the speech is of public concern because speech that promotes a purely private interest is not protected." *Marshall*, 32 F.3d at 1219. We therefore examine "the point of the speech in question; was it the employee's point to bring the wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?" *Cliff*, 42 F.3d at 410 (quotations omitted). The fact that an employee has a personal stake in the subject matter of the speech does not necessarily remove the speech from the scope of public concern, however. *See id.* On the other hand, "the fact that an employee speaks up on a topic that may be deemed one of public import does not automatically render his remarks on that subject protected." *Smith v. Fruin*, 28 F.3d 646, 651 (7th Cir.1994). Indeed, we held that speech lacks the public concern element if it "concerns a subject of public interest but the expression addresses

only the personal effect upon the employee." *Marshall*, 32 F.3d at 1219. We must therefore determine whether the speaker is speaking "more like a citizen or a disgruntled employee whose statements are primarily of personal interest." *Colburn v. Trustees of Ind. Univ.*, 973 F.2d 581, 585 (7th Cir.1992).

▮ Where considerations of content, form, and context suggest that an employee raised a topic of societal interest for "personal reasons rather than a desire to air the merits of the issue," *Fruin*, 28 F.3d at 652, or solely to "bolster [his] own position in a private personnel dispute with [his] superiors," *Cliff*, 42 F.3d at 411, the speech is not entitled to First Amendment protection. As the Supreme Court stated in *Connick*:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

461 U.S. at 147, 103 S.Ct. 1684.

### 2.

▮ Button recalls his conversation with Brown as follows:

> I told her that we had gotten these materials [for] Mike Shannon; whom she knew; and that they were specifically for him, and that he wasn't going to be allowed to use them. And that my idea was, obviously I believed the Warden had a right to decide what he wanted to do about that, but my idea was if we're not going to use them for him, to send them back to California. But the decision was made not to do that, but to give them to anybody— other inmates to use throughout the institution. But he couldn't use them.

Trial Tr. at 88–89, *Button v. Kibby–Brown*, No. 94 CV 3093 (C.D.Ill. May 20, 1997).

Button characterizes his speech as involving matters of public concern because he claims it concerned the treatment of an inmate and the prison's potential liability to Gateway for not following the agreed-upon conditions for the donation of the *Hooked on Phonics* materials. We disagree. His testimony does not reveal that he was attempting to "bring a wrongdoing to light," *Cliff*, 42 F.3d at 410, but instead suggests that he was airing a personal disagreement with a superior's decision. Button's speech, therefore, was simply too "'remote from the [First Amendment's] central purpose of protecting the public marketplace in ideas and opinions,'" *Campbell v. Towse*, 99 F.3d 820, 827 (7th Cir.1996) (quoting *Eberhardt v. O'Malley*, 17 F.3d 1023, 1026 (7th Cir.1994)), to warrant constitutional protection.

We base our conclusion on the factors listed above, none of which is determinative. We begin by examining the content of Button's speech. Even if the conversation occurred in the way Button alleges, we would be hesitant to find that it involved matters of public concern. First, Button's claim that his speech concerned the treatment of an inmate falls somewhat short; Button did not ask Brown to allow Shannon to use the materials—in fact Button suggested that the materials should be sent back so that *no* inmates could use them. If Button sincerely was concerned about Shannon's education and felt that withholding the *Hooked on Phonics* materials was somehow unfair or unacceptable, he would not advocate the return of the materials. And Button acknowledged that the Warden had the authority to make the decision not to allow Shannon to use the materials, so Button could not have been concerned about potential violations of law or prison procedures. Second, although Button claims he was concerned about potential liability, his recollection of the conversation does not include any mention of liability or a potential breach of an agreement with Gateway. Instead, Button's speech focuses on his disagreement with the decision to keep the materials. While Button *may* have disagreed with this decision for liability reasons, he also may have disagreed because Gateway's letter to him specifically requested that he report on Shannon's progress. Button may have felt he personally was not fulfilling Gateway's request. This reason is personal to Button and does not involve a matter of public concern. Again, one can reasonably assume that if Button's motivation was more

than just airing a personal disagreement with the decision of a superior, he would have mentioned his greater concerns. Because Button's speech does not establish why he disagreed with McEvers' decision, we cannot conclude that the content of his statements was on a matter of public concern.

Considerations of form and context bolster our view. Button specifically asked to speak with Brown in a private, informal setting. Button did not take steps to document his concerns, nor did he disclose them to anyone other than the person he thought could overturn the decision with which he disagreed. Additionally, Button spoke to Brown in the midst of a dispute with Kibby–Brown about the decision. These considerations also lead us to believe that Button's speech falls outside the protection of the First Amendment. *See Wales v. Board of Educ. of Community Unit Sch. Dist. 300*, 120 F.3d 82, 84 (7th Cir.1997) ("Although the first amendment is not limited to speech that is broadcast to the world ....·an employee's decision to deliver the message in private supports an inference that the real concern is the employment relation ...." (citations omitted)).

We recognize that matters of public concern may be raised in the midst of a personal dispute, *see Colburn*, 973 F.2d at 587, and that a private venue does not conclusively establish the speech was solely on a matter of personal interest, *see Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979). However, given our review of the record and the *Connick* factors of content, form, and context, we are convinced that Button's statements to Brown did not address a matter of public concern. Thus the district court properly granted the defendants' motion pursuant to Fed.R.Civ.P. 50(a).

We therefore AFFIRM the decision of the district court.