Peter A. KOKKINIS, Plaintiff,

v.

Vladimir IVKOVICH, et al., Defendants.

No. 97 C 1348.

United States District Court,
N.D. Illinois,
Eastern Division.

July 13, 1998.

Jerome F. Marconi, Jr., Jerome F. Marconi & Associates, Chicago, IL, for Plaintiff.

William W. Kurnik, Michelle Jeanette Hirsch, Kurnik, Cipolla, Stephenson & Barasha, Arlington Heights, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendants Village of Bridgeview and Vladimir Ivkovich's motion for summary judgment. For the following reasons, the court grants defendants' motion.

## I. BACKGROUND[1]

Plaintiff Peter Kokkinis ("Kokkinis") is a patrol officer with defendant Village of Bridgeview ("the Village"). Defendant Vladimir Ivkovich ("the Chief") is the Chief of Police of the Village's police department ("the department"). Kokkinis brought this suit against defendants pursuant to 42 U.S.C. § 1983, claiming that defendants violated his First Amendment rights by retaliating against him because of statements he made about the Chief during a news report aired on Channel Five News at 5:00. This court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331.

Before detailing the relevant facts, the court must make one comment on an evidentiary issue. In support of their motion for summary judgment, defendants submitted excerpts from diaries kept by Kokkinis.[2]

---

1. Unless otherwise indicated, the following undisputed facts are taken from the parties' Local Rule 12(M) and 12(N) statements. *See infra* Part II.B (addressing the impact of Kokkinis' failure to comply with Local General Rule 12 on the court's determination of the undisputed facts).

2. Kokkinis kept two diaries: (1) a diary that he began in 1991 in which he wrote down "inconsistencies with respect to administrative affairs" in the department and (2) a small notebook in which he would jot down ideas as he thought of them.

Defendants have submitted these excerpts not as evidence of the truth of the matter asserted therein but, rather, as evidence of Kokkinis' state of mind; thus, the diary excerpts do not constitute inadmissible hearsay. Kokkinis has not disputed the authenticity of these diary entries. Accordingly, the court will consider the statements contained in those diary excerpts as evidence of Kokkinis' state of mind.

In order to understand this court's opinion, one must be aware of a number of facts. For the sake of clarity, a recitation of these facts is in three parts. Part A discusses events that occurred with respect to Kokkinis' employment in the department prior to Kokkinis' appearance on Channel Five News at 5:00. Part B discusses the facts related to Kokkinis' appearance on the news program, including the statements Kokkinis made which are the subject of this § 1983 First Amendment retaliation suit. Part C discusses events that occurred after Kokkinis' appearance on the news program.

### A. Events occurring before Kokkinis' television appearance

Kokkinis began working with the department in 1987. In May of 1990, Kokkinis applied for the position of tactical officer. Kokkinis was not made a tactical officer. In 1994, Kokkinis applied for a promotion to detective. Kokkinis did not get that promotion, which upset him.

On January 20, 1995, Kokkinis filed two grievances complaining of discrimination: grievances Number 95–02 and 95–01. In Number 95–02, Kokkinis complained that the department discriminated against him by not promoting him to an investigative position. In Number 95–01, Kokkinis complained that the Chief discriminated against him by not reimbursing him for educational expenses.

Sometime after these grievances were filed but before Kokkinis' television appearance, the Chief was informed that there was an armed robbery arrest made by a rookie officer, Officer Carroll. The Chief was told that Carroll had apprehended the suspect and disarmed him, after which Kokkinis arrived on the scene and "took credit for the collar." Based on that information, the Chief gave Carroll, not Kokkinis, a commendation. In a diary entry dated February 10, 1995, Kokkin-

is notes that the commendation was posted after he had filed the above grievances. He also questions why he was not mentioned in the commendation and states "it looks like the Chief's pimp games again."

In a diary entry dated February 16, 1995, Kokkinis notes that a member of the department was fired on Valentine's Day. Kokkinis states that the firing was "quite cold but this is the Chief's style, what can you do." Kokkinis also notes that he had offered to assist a lieutenant without any compensation "because the Chief would not like me assisting."

On February 24, 1995, Kokkinis had a conversation with the Chief, in which the Chief asked Kokkinis why the two grievances filed had gone straight to the Mayor's office and not to the Chief's office first. According to a February 24, 1995 diary entry, the Chief told Kokkinis that he had no knowledge about either grievance. About this conversation, Kokkinis noted: "I could not believe that the Chief looked me in the face and lyed [sic]. The goof gave me a letter on 6 Feb. and I gave him a reply on 10 Feb., and he said he had no knowledge, what bullshit."

On March 3, 1995, a meeting was held with the Chief, union representatives, Kokkinis and attorneys for both sides. In this meeting, the Chief stated his reasons for not promoting Kokkinis to detective. In his diary, Kokkinis made the following notes about this meeting: "When the Chief spoke, the man lyed [sic] again but now made it personal. He stated that I don't work with administration or have the qualities to be a detective. He even said that Sgt. Brzinski does not even want me down there." According to the diary entry, Kokkinis ran into Brzinski later that day, at which point Brzinski told Kokkinis that he did not have a problem with Kokkinis working in the detective department. Kokkinis noted: "This reconfirmed that the Chief is lying again."

In March of 1995, the Chief directed one of the officers to go to a used car business and move a Corvette that was parked on an easement. The Chief made the officer go back and issue a ticket. Kokkinis noted in his diary: "Some body [sic] made whistle sounds after the Chief's comment which signifies stupidity." Also in March of 1995,

Kokkinis noted that a fight had occurred during a Board meeting and yet no police action was taken. This led Kokkinis to conclude that the Chief had "violated rules and regulations."

On April 25, 1995, Kokkinis noted that he found out that the were written reprimands in his file. Kokkinis wrote that this "pissed him off" because the reprimands were over eighteen months old, he did not know about the reprimands, and the reprimands "were lies."

As of mid-May of 1995, Kokkinis had not received any reply from the Chief as to the grievances that he filed in January of 1995. It is at that time that Kokkinis made his appearance on Channel Five News at 5:00 and made the statements about the Chief.

### B. *Kokkinis' television appearance on Channel Five News*

In mid-May of 1995, Kokkinis appeared on a Channel Five News at 5:00 report covering an allegation of sexual discrimination in the Village's police department. (Videotape of the Channel Five News Report (hereinafter "The Videotape").) The report dealt with Officer Sharon Walsh's allegation that she was being forced to take a position in Springfield against her wishes because she was a woman.

During the report, reporter Cindy Hernandez interviewed Kokkinis, who was not identified by name but was only identified as a Bridgeview police officer. Kokkinis was dressed in a black hood or ski cap and wore dark glasses. It was Kokkinis' idea to wear the dark hood and the dark glasses because he was afraid of retaliation even though he had never been the victim of any retaliatory acts. Hernandez reported that Kokkinis felt that Walsh was "unfairly being chosen" for the Springfield position. (The Videotape.) Kokkinis, who was behind some type of screen and whose voice was garbled, then commented: "If they really knew what was going on, I think they would be shocked." The reporter asked, "Why?" (*Id.*) Kokkinis then explained: "Because they are clueless as to what is going on. Everybody is so afraid of the Chief's vindictiveness. If you even dare to question any decision he makes, basically your life will be made miserable."

Kokkinis had agreed to be interviewed for the report after being contacted by Hernandez and being told that the station was going to report a story on sexual discrimination in the police department. Kokkinis had agreed to talk to the reporter because he felt that Walsh was being discriminated against because she was a woman. Kokkinis wanted to help Walsh's cause. He hoped that a television appearance would encourage more officers to speak out. Kokkinis did not know whether Walsh maintained that the Chief ordered her to Springfield because he was vindictive or whether any of his comments concerning the Chief's vindictiveness had anything to do with Walsh's position. Further, Kokkinis did not know or have a belief as to why the Chief ordered Walsh to go to Springfield.

When Kokkinis spoke to Hernandez, he told her that he believed that Walsh was the victim of sexual discrimination and that she was being singled out because she was a woman. In addition to the comments broadcasted, Kokkinis also spoke with Hernandez about the aspect of sexual discrimination.

### C. *Events occurring after Kokkinis' television appearance*

After the report, Lieutenant Dubik ("Dubik") conducted an investigation to determine the identity of the disguised officer. When Dubik saw the tape, he tried to figure out the relation between Walsh's case and the vindictive comments. After slowing down the tape, Dubik determined that the unidentified officer was Kokkinis. After the investigation was concluded and after consultation with the Village's attorney, the Chief believed that Kokkinis had violated the department's rules and regulations dealing with insubordination and failure to notify the Chief prior to appearing on television. The Chief disciplined Kokkinis for making the television appearance.

On June 21, 1995, a meeting was held in the Chief's office concerning the discipline to be imposed on Kokkinis for his television appearance. Referring to this meeting, Kokkinis wrote in his diary:

Now the Chief started with the lack of understanding on why I felt he was unfair

and vindictive.... I asked for permission to speak candidly and when given a nod from the Chief, told him how I have eaten numerous suspensions particularly a five day suspension from an incident at the patio.

Kokkinis wrote that he further told the Chief that in conducting their investigations, the Chief and his administrative personnel had violated rules and regulations and Uniform Peace Officers Disciplinary Acts. He wrote that he told the Chief that he had said nothing about those violations either out of respect or in an attempt to keep the peace but that "enough is enough."

## II. *DISCUSSION*

### A. *Local General Rule 12*

■ Before addressing the merits of defendants' motion for summary judgment, the court must address Kokkinis' failure to comply with Local General Rule 12 ("Rule 12"). Rule 12(M) requires the party moving for summary judgment to file, among other items, a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." LOCAL GEN.R. 12(M). The required statement is to consist of short numbered paragraphs, including within each paragraph specific cites to the record which support the facts set forth. *Id.* Rule 12(N) then requires the opposing party to file, among other items,

> a concise response to the movant's statement that shall contain: (a) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the records, and other supporting materials relied upon....

LOCAL GEN.R. 12(N)(3). Rule 12(N) further provides that "[a]ll material facts set forth in the statement of the moving party will be deemed admitted unless controverted by the statement of the opposing party." *Id.* The Seventh Circuit has upheld strict compliance with Rule 12 on numerous occasions. *Huff v. UARCO Inc.*, 122 F.3d 374, 382 (7th Cir. 1997).

In this case, defendants filed a proper Rule 12(M) statement. In response, Kokkinis submitted a Rule 12(N) statement in which Kokkinis either admitted or denied the facts contained in defendants' Rule 12(M) statement. However, Kokkinis failed to provide "specific references to the affidavits, parts of the records, and other supporting materials relied upon" in those instances in which he denied defendants' 12(M) statement. This deficiency was pointed out in defendants' reply memorandum; yet, Kokkinis made no effort to correct the problem. Accordingly, to the extent the facts contained in defendants' 12(M) statement are supported by the record, they are deemed admitted as they are uncontested. *E.g., Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir.1997); *Benion v. Bank One, Dayton*, 967 F.Supp. 1031, 1033 n. 1, (N.D.Ill.1997).

### B. *Standard for deciding a motion for summary judgment*

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir.1995).

The burden is on the moving party to show that no genuine issues of material fact exist. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party presents a *prima facie* showing that he is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir.1989).

## C. *Kokkinis' § 1983 First Amendment retaliation claim*

Kokkinis claims that defendants violated 42 U.S.C. § 1983 when they retaliated against him for exercising his First Amendment rights by making statements about the Chief on television. In order to establish a § 1983 First Amendment retaliation claim, Kokkinis must show that (1) the speech in which he engaged was constitutionally protected under the circumstances and (2) defendants retaliated against him because of his speech. *Button v. Kibby–Brown*, 146 F.3d 526, 529 (7th Cir.1998) (citing *Gorman v. Robinson*, 977 F.2d 350, 354 (7th Cir. 1992)); *Gustafson v. Jones*, 117 F.3d 1015, 1018 (7th Cir.1997); *Barkoo v. Melby*, 901 F.2d 613, 617 (7th Cir.1990).

█ Determining whether a plaintiff's speech is constitutionally protected requires the court to make a two-part determination. *Button*, 146 F.3d at 529, *Khuans v. School Dist. 110*, 123 F.3d 1010, 1014 (7th Cir.1997); *see Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The court first must determine whether the plaintiff's speech addressed a matter of public concern. *Button*, 146 F.3d at 529; *Breuer v. Hart*, 909 F.2d 1035, 1037 (7th Cir.1990). If the speech involves a matter of public concern, then the court must conduct a balancing test to determine whether the government's interest, as an employer, in providing services efficiently outweighs the plaintiff's interest in expressing himself. *Khuans*, 123 F.3d at 1015. The court need not conduct the described balancing test if the speaker fails to establish that his speech addressed a matter of public concern. *Button*, 146 F.3d at 529; *Cliff v. Board of School Commissioners of City of Indianapolis*, 42 F.3d 403, 409 (7th Cir.1994). Whether the speech addresses a matter of public concern is a question of law for the court to decide. *Caruso v. De Luca*, 81 F.3d 666, 670 (7th Cir.1996); *Cliff*, 42 F.3d at 409.

█ Speech on a matter of public concern is speech which relates to a matter of political, social, or other concern of the community. *Connick*, 461 U.S. at 146, 103 S.Ct. 1684; *Khuans*, 123 F.3d at 1014–15. Speech which is centered on a personal dispute or grievance with the employer is not speech on a matter of public concern. *Campbell v. Towse*, 99 F.3d 820, 827 (7th Cir.1996). However, the mere fact that the plaintiff has a personal stake in expressing his views does not remove the plaintiff's expression from First Amendment protection. *Id.*

█ To determine whether the plaintiff's speech involved a matter of public concern, the court must examine "the content, form, and context of the statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. 1684; *Button*, 146 F.3d at 529. Of these three factors, content is the most important. *Button*, 146 F.3d at 529; *Breuer*, 909 F.2d at 1039. The court must consider only the speech which caused the adverse employment action to be taken. *Caruso*, 81 F.3d at 670.

█ The speaker's motive in making the statements at issue is also a relevant, although not dispositive, consideration. *Button*, 146 F.3d at 529. Further, motive does not supplant content in terms of overall importance to the public concern inquiry. *Cliff*, 42 F.3d at 410. In determining the speaker's motive, the court must determine whether the speaker is speaking "more like a citizen or a disgruntled employee whose statements are primarily of personal interest." *Colburn v. Trustees of Ind. Univ.*, 973 F.2d 581, 583 (7th Cir.1992). However, motive is not determined in a vacuum. *Marshall v. Porter County Plan Comm'n*, 32 F.3d 1215, 1219 (7th Cir.1994). The court must look to the content, form, and context of the speech to determine whether the motive is personal. *Id.* When the speaker's motives are mixed, "the speech will not be found to raise a matter of public concern if 'the overriding reason for the speech,' as determined by its content, form, and context, appears to have been related to the speaker's personal interests as an employee." *Hartman v. Board of Trustees of Community College Dist. No. 508*, 4 F.3d 465, 471–72 (7th Cir.1993).

█ If the speech does not involve a matter of public concern, the defendant's actions are not subject to judicial review in federal

court. *Breuer,* 909 F.2d at 1037. As the *Connick* Court stated:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick,* 461 U.S. at 147, 103 S.Ct. 1684.

■ In this case, the court finds that Kokkinis' statements concerned a matter of only personal, not public, concern. The court's determination is based on its consideration of the factors discussed above, with no one factor being determinative.

The court first considered the entire content of Kokkinis' statements. The statements at issue are Kokkinis' statement "If they really knew what was going on, I think they would be shocked." and his explanatory statement "Because they are clueless as to what is going on. Everybody is so afraid of the Chief's vindictiveness. If you even dare to question any decision he makes, basically your life will be made miserable."

Examining those statements, the court finds that the content of Kokkinis' statements consists only of Kokkinis' personal view that the Chief is vindictive, which is not a matter of public concern. *See Yoggerst v. Hedges,* 739 F.2d 293, 296 (7th Cir.1984) ("The First Amendment ... does not make every expression of a public employee's dissatisfaction with a superior a 'federal case.' "). There is no evidence in the record that any other officer believed the Chief to be vindictive and, thus, that Kokkinis was speaking on behalf of other officers when he made the statements. *See Cliff,* 42 F.3d at 411. Further, there is no evidence that the statements were at all related to Walsh's charge of discrimination. In his statements, Kokkinis did not discuss or even mention Walsh or her charge of discrimination. In his deposition, Kokkinis admitted that he did not know the basis of Walsh's charges or whether she contended that the Chief was vindictive. Finally, in his Rule 12(N) statement of additional facts, Kokkinis stated that "[i]n addition to the comments broadcasted,

Plaintiff spoke to Ms. Hernandez about the aspect of sexual discrimination." (Pl.'s Statement of Additional Undisputed, Material Facts ¶ 16.) The only reasonable inference from this statement is that Kokkinis recognizes that the statements aired were not related to Walsh's discrimination claim. Thus, the content of Kokkinis' statement shows that he was speaking as an employee about his personal feelings about the Chief and not in his role as a citizen on a matter of public concern.

Kokkinis argues that the "very content of [his] speech invited the residents of Bridgeview to take a closer look at the situation inside the police department concerning the allegations of sexual discrimination." (Pl's Resp. at 3.) This is an overstatement of what Kokkinis' speech addressed. Kokkinis' speech dealt only with his view that the Chief was vindictive and not with Walsh's charge of discrimination. Kokkinis was not inviting the public to look into the charges of discrimination; rather, he was stating that the public does not know how vindictive the Chief is.

The court also considered the context in which the statements were made. These statements were made while Kokkinis was undeniably unhappy with the Chief. This is evidenced by the excerpts from Kokkinis' diary in which Kokkinis calls the Chief a "goof," accuses the Chief of lying to him on several occasions, describes the Chief's style as "quite cold," and makes references to the Chief's "pimp games." It is true, as Kokkinis stresses, that the statements were made in the context of a news report about Walsh's sexual discrimination claim. However, as discussed above, Kokkinis' statements concerned only his view that the Chief was vindictive and not Walsh's charge of discrimination. The First Amendment does not give Kokkinis carte blanche to say anything that he wanted about the Chief simply because he was speaking on a news program covering a claim of sexual discrimination. In such a situation, the First Amendment only protected his speech insofar as it related to Walsh's charge or some other issue of public concern. Thus, because of the content of Kokkinis' speech, the fact that the statements were made during a news program covering a

wholly unrelated issue is not as important as the fact that the statements were made while Kokkinis was undeniably unhappy with the Chief.

The court also considered the form in which the statements were made. Kokkinis made his statements in public on a news program. However, that fact alone does not mean that his statements involved an issue of public concern because the mere fact that the television station published his statements does not mean they addressed an issue of public concern. *Vukadinovich v. Bartels*, 853 F.2d 1387, 1391 (7th Cir.1988). Thus, the mere fact that these statements were made in public does not mean that the statements involved a matter of public concern.

Finally, the court considered Kokkinis' motivation in making the statements. Kokkinis claims that he was motivated to talk to Hernandez because he wanted to help Walsh's cause. However, that could not have been his motivation in making the statements at issue because those statements did not relate in any way to Walsh's charge of discrimination. A claim of vindictiveness is wholly different from a claim of discrimination. His only motivation in making the statements at issue must have been because he wanted the public to hear his view that the Chief was vindictive. Thus, the content, form and context of Kokkinis' speech show that Kokkinis' motivation in making the statements at issue was to further his own personal interests as a disgruntled employee.

Kokkinis relies on the case of *Matulin v. Village of Lodi*, 862 F.2d 609 (6th Cir.1988), in support of his position that his speech concerned an issue of public concern. However, *Matulin* is distinguishable. The statements made by the plaintiff in *Matulin* directly related to her claim that she had been the victim of discrimination. In this case, as discussed above, Kokkinis' statements had nothing to do with Walsh's charge of discrimination. The statements only had to do with Kokkinis' view that the Chief was vindictive.

Kokkinis also stresses the fact that Hernandez, not Kokkinis, initiated the interview. The fact of the matter is, however, that Kokkinis' statements had nothing to do with Walsh's charge of discrimination. The mere fact that Hernandez contacted Kokkinis and published his comments does not mean that his statements addressed a matter of public concern. *Vukadinovich*, 853 F.2d at 1391. Further, just because a statement might be of public "interest" does not mean that the statement is one of public "concern." As the Seventh Circuit has stated: "The factors which determine whether a story is newsworthy are hardly coterminous with the factors which determine whether the communication has societal ramifications, and in any event, newspaper [or television] editors cannot decide the question for us." *Egger v. Phillips*, 710 F.2d 292, 317 (7th Cir.1983) (en banc).

Having considered the content of Kokkinis' statements as well as the circumstances in which they were made, the court finds that Kokkinis' statements did not address an issue of public concern.[3] From the record, it is evident that Kokkinis did not like the Chief or the way that he ran the department. When Kokkinis made the statements at issue, it is the court's judgment that Kokkinis was speaking more like a disgruntled employee whose statements were primarily of personal interest than as a citizen speaking on a matter of public concern. Accordingly, the court finds that Kokkinis' statements were not constitutionally protected and, thus, that defendants are entitled to summary judgment on Kokkinis' § 1983 First Amendment retaliation claim.

### III. CONCLUSION

For the foregoing reasons, the court grants the Village of Bridgeview and Vladimir Ivkovich's motion for summary judgment. Final judgment is entered in this case in favor of defendants Village of Bridgeview and Vladimir Ivkovich and against plaintiff Peter Kokkinis.

---

**3.** Because the court has decided that Kokkinis' statements did not address an issue of public concern, the court need not conduct the *Pickering/Connick* balancing test, *Button*, 146 F.3d at 529, or address defendants' claim of qualified immunity.