In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1059

Stephanie Wallscetti,

Plaintiff-Appellant,

v.

John Fox, Charles Lagges, Louis DeRose,
and Pamela Laraia,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 4166--Harry D. Leinenweber, Judge.

Argued June 8, 2001--Decided July 20, 2001

   Before Flaum, Chief Judge, and Bauer and
Kanne, Circuit Judges.

   Flaum, Chief Judge.  Stephanie
Wallscetti appeals the district court's
grant of summary judgment in favor of the
defendants on her claim for retaliation
in violation of her First Amendment
rights. For the reasons stated herein, we
affirm.

I.  Background

   Wallscetti began working for the Cook
County Department of Environmental
Control in October, 1993 in the
Demolition/Asbestos Division and
transferred to the Commercial Division in
May, 1994. Wallscetti's immediate
supervisor in the Commercial Division was
Pamela Laraia, who reported to John Fox,
the manager of the Division. The person
above Fox was Louis DeRose, the Deputy
Director of Environmental Control, who
reported to Charles Lagges, the Director
of the Department. At the top of the
organization chart was Albert Pritchett,
the Chief Administrative Officer for Cook
County and Lagges's boss.

   The parties are unable to agree on most
of the remaining facts. Since the
defendants were awarded summary judgment,
we construe the evidence in the light

most favorable to the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

During her time with the County, Wallscetti made a number of complaints. The subject matter of some of these is not well-documented in the record, but the key one resulted after Wallscetti observed that Fox and Laraia were sometimes absent from their offices in the afternoons. The plaintiff hired a private investigator to tail Fox in November or December of 1996. Apparently based on information from the investigator and her own observations, Wallscetti concluded that Fox and Laraia often stayed on Cook County's clock while engaging in personal business away from the office. In February of 1997, Wallscetti informed the comptroller of Cook County of Fox's and Laraia's frequent absences from work during the day; she also complained to the Cook County Equal Employment Opportunity Officer, Claudette Giles, that she was being harassed by Laraia and Fox for engaging in whistleblowing activities. Pritchett, who apparently learned of the allegations from the comptroller, informed Lagges of the plaintiff's charges. At around this point, Lagges created a confidential file in which he occasionally entered notes about his dealings with the plaintiff and her allegations against his subordinates. Fox later learned of the allegations against him and purportedly told Wallscetti that her "days are numbered."

In March, Lagges scheduled a pre-disciplinary hearing to discuss whether Wallscetti had failed to follow the chain of command in making her various complaints and what repercussions would result. At this meeting, Lagges asked Wallscetti about whom she had provided information to and also requested that she give him any documentation that would substantiate her charges against Fox. Wallscetti refused to provide Lagges with any of her evidence.

In mid-April, DeRose received a letter stating that the Board of Ethics would be investigating Fox, and Fox was notified of this fact on May 5. Wallscetti was apparently on medical leave from May 15 until June 23. However, she claims that during this time Fox approached her and

said "My ass is covered; you will get yours bitch." On July 17, she was notified of a pre-disciplinary hearing that would be held to address charges that she had harassed Laraia, was insubordinate, failed to perform her duties properly, lied to supervisors, and submitted false documents in connection with an inspection she had performed. The hearing was conducted, and on July 25, DeRose submitted a memorandum summarizing his findings to Lagges and recommending that Wallscetti be discharged. Importantly, in the Environmental Control Department's command structure, only Lagges could terminate an employee; Laraia, Fox, and DeRose could not. After reviewing the report, Lagges fired the plaintiff.

The plaintiff's work record is the strongest source of contention between the two sides. By the time she was terminated, the defendants claim that Wallscetti had racked up a long list of reprimands for not performing her duties properly, insubordination, and even threatening Laraia and her family. Some of the reprimands for inadequate job performance were issued when the plaintiff was in the Demolition/Asbestos Division or otherwise well before the latter part of 1996. However, the plaintiff avers that she did not commit any of the alleged infractions. She also claims that she never saw a large number of these reprimands until shortly before she was discharged, arguing that the defendants were creating a paper trail so that she could be fired. She supports this theory with the deposition of another employee, Buvan Nathan, who claims that DeRose and Fox asked him in the summer of 1997 to let them reprimand him for filling out inspection sheets improperly so management would not appear to be singling out Wallscetti. Nathan states that DeRose told him the reprimand would be removed after Wallscetti was fired.

Wallscetti filed suit against the defendants in this appeal in both their individual and official capacities and the Cook County Department of Environmental Control, alleging primarily that the defendants retaliated against her for exercising her First Amendment rights by harassment, creating false reprimands, and eventually terminating

her. The district court dismissed the claims against Cook County and the remaining defendants in their official capacities. It also ruled that only violations that occurred after June 23, 1997 would be considered because of the statute of limitations, effectively limiting Wallscetti's retaliation claim to her termination. The plaintiff has not challenged these orders on appeal. The defendants then moved for summary judgment. The district court found that only Wallscetti's information about Fox's failure to work while on county time constituted protected speech,/1 that a reasonable jury could have found that a motivating factor for Wallscetti's termination was this speech, but that she would have been fired anyway. Thus, the court granted summary judgment to the defendants.

## II. Discussion

We review the district court's grant of summary judgment de novo, drawing all reasonable inferences in favor of the non-moving party. Johnson v. University of Wisconsin-Eau Claire, 70 F.3d 469, 477 (7th Cir. 1995). In order to prevail on a First Amendment retaliation claim, the plaintiff's speech must be constitutionally protected and have been a motivating or substantial factor in the defendants' actions. Kokkinis v. Ivkovich, 185 F.3d 840, 843 (7th Cir. 1999).

### A. Constitutionally Protected Speech

Wallscetti argues that all instances of her speech, including her various complaints about harassment by Laraia and Fox, are constitutionally protected. The defendants concede that the plaintiff's statements about Fox's leaving the office early and misusing county time are shielded by the First Amendment. However, they contend that the district court correctly found that Wallscetti's various other complaints about her supervisors are unprotected.

Speech by public employees is protected by the First Amendment if: (1) it addresses an issue of public concern; and (2) the employee's interest in speaking outweighs the interest of the state in efficiently providing services. Id. at

843-44. The parties argue over only the first part of this test, without discussing the second. To determine whether speech is on an issue of public concern, we examine factors such as content, form, context, and motivation, with content being the most important. Button v. Kibby-Brown, 146 F.3d 526, 529 (7th Cir. 1998).

These determinants indicate that Wallscetti's reports of harassment are not protected. The content of Wallscetti's complaints shows that she was complaining only about Fox and Laraia's hostility toward her personally, rather than more generally about her supervisors' effect on the morale of the office as a whole or some other issue of broader importance. Generally, speech relating to only the effect an employer's action has on the speaker is not shielded by the First Amendment, since it rarely involves a matter of public concern. See id. at 529-30; Cliff v. Board of Sch. Comm'rs of City of Indianapolis, 42 F.3d 403, 410-11 (7th Cir. 1994). The form of Wallscetti's speech, contacting her supervisors' internal superiors rather than attempting to bring the harassment into view of those outside the County's administrative structure, further supports finding that her complaints are not protected./2 See Taylor v. Carmouche, 214 F.3d 788, 792 (7th Cir. 2000); Wales v. Board of Educ. of Community Unit Sch. Dist. 300, 120 F.3d 82, 84 (7th Cir. 1997). The fact that the complaints were made during the course of an apparently long-running dispute with her immediate supervisors, the context of and apparent motivation for her speech, also indicates that the speech was not directed toward airing a matter of public concern. See Button, 146 F.3d at 530-31. In sum, these complaints of harassment were more in the nature of a private personnel dispute rather than an issue in which the public at large would be genuinely interested. Id. at 530; see also Berger v. Battaglia, 779 F.2d 992, 998-99 (4th Cir. 1985). Therefore, we conclude that the district court correctly found that none of Wallscetti's speech except for her allegations about Fox leaving the office early is constitutionally protected.

B.  Causation

The next question is whether Wallscetti's reports to the Board of Ethics on Fox's misuse of county time and resources was a motivating factor in her termination. One key fact in evaluating this issue is that Lagges alone fired the plaintiff, and he was the only one of the individual defendants named in this suit with the power to do so. Thus, with an exception discussed below, in order to create a triable issue on whether her protected statements were a motivating factor in her discharge, Wallscetti must produce sufficient evidence for a reasonable factfinder to decide that Lagges harbored a retaliatory intent. See Willis v. Marion County Auditor's Office, 118 F.3d 542, 546 (7th Cir. 1997); see also Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1400 (7th Cir. 1997). Considering all of the record evidence recounted below in the aggregate, as of course we must on a summary judgment motion, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), whether Wallscetti has satisfied this burden is a somewhat close question. Nevertheless, we conclude that she has not.

Wallscetti claims that Lagges's own statements, most of which are contained in the file he began in February, 1997, are sufficient to provide the link between her protected conduct and discharge, but we find otherwise. Lagges did say that he desired relief from the plaintiff's "constant allegations." However, this statement appears to be directed primarily towards Wallscetti's claims of harassment of by Fox and Laraia, which are not a matter of First Amendment concern as described above, and various other grievances, which Wallscetti does not argue are protected, rather than the plaintiff's information about Fox's failure to perform his duties. The use of "constant" reinforces this conclusion, since the protected speech about Fox was only one of the apparently frequent complaints that Wallscetti made to various officials such as Pritchett and Giles.

Lagges also said that he was "stressed" by the Board of Ethics' investigation of Fox. However, the context of this statement shows that Lagges was annoyed by what he felt were repetitive and duplicative requests from the Board of

Ethics for documents, which were disrupting the work of the office. Any animus in Lagges's comment was directed at what he believed to be an inefficient investigation by the Board of Ethics rather than at Wallscetti.

The plaintiff further argues that Lagges's questioning of her at the March, 1997 pre-disciplinary hearing to determine if she had spoken to federal or state authorities besides those in the Cook County hierarchy supports an inference that he intended to retaliate against her. However, such an inference is too tenuous to be reasonable; Lagges did not threaten to discipline Wallscetti for her speech about Fox but simply asked her to whom she had given information. Moreover, Lagges's concerns at this meeting were to investigate Wallscetti's circumvention of the chain of command and her refusal to provide any documentation for her charges against Fox to Lagges. Lagges had a strong and legitimate interest in determining whether Fox or any of his other subordinates had engaged in malfeasance, and his questions were aimed at finding a way to obtain this information.

Wallscetti also points to an April 10, 1997 entry in Lagges's confidential file. This entry mostly discusses Lagges's unwillingness to grant Wallscetti a transfer until she provided him with supporting evidence for her allegations against Fox. The end of the note states that "if the charges are proven baseless, she may be disciplined or discharged," which Wallscetti believes aids her case. However, this sentence provides little support for an inference of retaliation. First, Wallscetti has not provided any evidence to show that Lagges eventually concluded that her complaints were "baseless." Thus, any assertion that he disciplined her for the reason stated in the entry is speculative. Second, the fact that the plaintiff still had not provided Lagges any of the information about Fox and the overall context of the entry illustrates his doubts about whether she had any evidence to support her charges. If the plaintiff's allegations against Fox were in fact "baseless" in the sense that she did not have any supporting evidence and the claims were untrue, which is to say that her charges were recklessly false, then

she could have been disciplined without violating the First Amendment. See Brenner v. Brown, 36 F.3d 18, 20 (7th Cir. 1994) (per curiam). Lagges's legally accurate statement to this effect provides little support for the inference that he would have punished Wallscetti if in fact her allegations against Fox did have an evidentiary basis.

Moving on from statements by Lagges, Wallscetti also relies on what she contends is the relatively short period of time between her protected conduct and termination. Lagges apparently learned of Wallscetti's claim that Fox was misusing county time in either February or March of 1997, and Wallscetti was fired at the end of July. Thus, the length of time between the protected speech and the adverse employment action is at least four months, which, without more, is too long to support a reasonable inference of causation. See Filipovic v. K & R Express Sys., Inc., 176 F.3d 390, 399 (7th Cir. 1999); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992).

The plaintiff's last pieces of evidence are the threats by Fox that her "days are numbered" and "you will get yours," which she argues clearly show a retaliatory intent. The district court also specifically relied upon these statements in determining that Wallscetti had raised a triable issue as to whether retaliation was a motivating factor in the plaintiff's discharge. However, "[s]tatements by subordinates normally are not probative of an intent to retaliate by the decisionmaker." Willis, 118 F.3d at 546. One exception to this general principle is where the decisionmaker relies on information provided by a subordinate with retaliatory animus. Id. at 547-48. In this case, Wallscetti has failed to provide any specific facts to support a claim that Lagges relied on Fox's opinions in deciding to fire the plaintiff, and thus evidence of Fox's animus cannot be imputed to Lagges. See Oates v. Discovery Zone, 116 F.3d 1161, 1172-73 (7th Cir. 1997).

III. Conclusion

Applying the multi-factor test to determine whether speech is of public concern, we find that Wallscetti's

complaints of personally being harassed by her supervisors is not. The plaintiff is unable to raise a triable question as to whether her allegations about Fox's misuse of county time and resources, which the defendants concede is protected speech, motivated her discharge. Therefore, the district court's grant of summary judgment is Affirmed.

FOOTNOTES

/1 The district court found no record evidence that Wallscetti complained about Laraia, even though the plaintiff claimed to have gathered information indicating that Laraia was not performing her duties.

/2 In her reply brief, Wallscetti notes that Lagges asked her whether she had contacted agencies or persons outside of the Department at the March, 1997 pre-disciplinary hearing, apparently to suggest that she did make her complaints public. However, Lagges's questioning whether she had transmitted her allegations to others does not establish that she in fact did so. Wallscetti, as the plaintiff, bears the burden of proving that her speech was of public concern, Klunk v. County of St. Joseph, 170 F.3d 772, 775 (7th Cir. 1999), and, as the non-moving party, must come forward with specific facts to demonstrate a genuine issue for trial, Fed.R.Civ.P. 56(e). Here, the only record evidence is that Wallscetti complained to persons within the Cook County hierarchy. If the plaintiff had contacted outside agencies, she could have stated so in her affidavit.

A similar analysis and conclusion applies to Wallscetti's claim that she complained about Laraia as well as Fox. In an attempt to establish this supposed fact, Wallscetti relies on her collection of information about Laraia, Lagges's notes indicating that the plaintiff threatened to "get" Laraia, and Lagges's questioning of the plaintiff about whether she had complained to outside agencies about Laraia. However, none of these pieces of evidence provide significant support for Wallscetti's claim that she actually complained about Laraia. If Wallscetti had in fact notified others of Laraia's alleged wrongdoing, she could have averred this fact directly through her affidavit.