**Elizabeth MARSHALL,**
**Plaintiff–Appellee,**

v.

**PORTER COUNTY PLAN COM-**
**MISSION, et al., Defendants–**
**Appellants.**

**No. 93–2794.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 8, 1994.

Decided Aug. 23, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 30, 1994.

Rosalie B. Levinson, Levinson & Lustina, Merrillville, IN (argued), Ivan E. Bodensteiner, Valparaiso, IN, for plaintiff-appellee.

Robert A. Welsh, Harris, Welsh & Lukmann, Chesterton, IN, William W. Kurnik, Kurnik, Cipolla, Stephenson & Barasha, Arlington Heights, IL (argued), for defendants-appellants.

Before PELL, WOOD, Jr., and ESCHBACH, Circuit Judges.

PELL, Circuit Judge.

After Elizabeth Marshall was terminated from her position as the Executive Secretary for the Porter County Plan Commission, she filed a suit under 42 U.S.C. § 1983, in which she alleged that her discharge was in retaliation for exercising her First Amendment right to free speech. She also claimed that she was discharged in violation of the Fourteenth Amendment. The case proceeded to trial on her First Amendment claim, and the jury found for Marshall. The defendants appeal, claiming various trial errors and arguing that they did not violate Marshall's First Amendment rights.

## I.

Elizabeth Marshall was appointed to the position of Executive Secretary of the Porter County Plan Commission in January 1984 and was reappointed annually until December 1991. The Plan Commission consisted of nine members, five of whom were appointed and four of whom were members by virtue of their holding other County offices. The Plan Commission holds hearings on rezoning, subdivisions, and changes in land use.

As the Executive Secretary, Marshall reviewed subdivision plats and organized procedures for variances, rezonings and use variances, in preparation for public hearings. In her capacity, she worked with the County Building Inspector, who was appointed by the Porter County Board of Commissioners.

In January 1989, Ray Weltz was appointed as County Building Inspector, due in large part to the efforts of William Carmichael, who was a County Commissioner and a member of the Board. Shortly after Weltz' appointment, Marshall raised some questions about his performance, including excessive claims for mileage. Marshall also informed Carmichael and the Policy Committee of her concerns. No action was taken on the matters she raised.

Over the next few months the relationship between Weltz and Marshall deteriorated rapidly. At a meeting scheduled to address the conflict between Marshall and Weltz, on December 11, 1990, Marshall presented to the Plan Commission a list of concerns about Weltz, including his claims for excessive mileage, his involvement in partisan political activity in the office during county time, and his failure to make required building inspections. She also presented a list showing that one-half of the required inspections had not been performed. The Plan Commission took no action, and the situation remained the same. In early January of 1991, the Commission reappointed Marshall for a limited term of four months.

On January 24, 1991, Marshall met with Brian Hurley, attorney for the Plan Commission and the Board of Zoning Appeals, and informed him that in mid-December members of the Board of Zoning Appeals had met secretly, prior to a public meeting, in violation of the Indiana open door law. Marshall had overheard a discussion between a few members of the Board concerning a variance that had been requested by developer William Putz. Marshall heard the members state that they were "going to get this guy." In response to Marshall's comments, Hurley indicated that he would not take action because the Board of Zoning Appeals had already prevailed in court and would prevail on appeal. In February, Marshall provided Putz' attorney with an affidavit that described the improprieties that she had observed. The newspapers reported the disclosure.

The Plan Commission met in late February to discuss Marshall's job performance. Marshall was not present. At an executive meeting in March 1991, with Marshall present, the members of the Plan Commission discussed their concerns with Marshall. Two days later, Marshall's employment was terminated, resulting from a vote of 7–2 by the Plan Commission. Those who voted against Marshall cited reasons ranging from the way she was doing her job to the handling of the Putz matter and the nature of her complaints concerning Weltz.

Marshall filed suit. The defendants filed a motion for summary judgment in which they argued that Marshall's complaints concerning Weltz were personal in nature and not protected, that because she was a policymaker, her speech was not protected by the First Amendment, that she failed to establish that she was discharged for her speech, that she was not entitled to a name-clearing hearing under the Fourteenth Amendment, and that the defendants were entitled to qualified immunity. The district court granted the motion as to the Fourteenth Amendment claim and as to any claims against the defendants in their individual capacities. The district court denied the motion in all other respects.

The case proceeded to trial before a magistrate judge, pursuant to 28 U.S.C. § 636(c). After the presentation of evidence, the trial court instructed the jury that, as a matter of law, Marshall spoke on matters of public concern and left for the jury the question of whether she was discharged for that speech:

> A governmental employee, such as the plaintiff, has a right protected by the First Amendment to the U.S. Constitution to speak on matters of public concern relating to her agency or office. The court has determined that the plaintiff was speaking and raising questions about matters of public concern in her speech about Weltz' mileage reports, her allegations about his failure to conduct inspections, his political activities, and the Putz matter. Therefore, if Ms. Marshall shows that her speech was a substantial or motivating factor in the Plan Commission's decision to discharge her, then you must find in the plaintiff's favor unless the defendants prove by a preponderance of the evidence that she would have been discharged even absent her protected speech.

Court's Instr. 15. The jury found in favor of Marshall and awarded damages. The defendants subsequently filed a motion for a new trial or judgment notwithstanding the verdict, which the district court denied.

## II.

The defendants argue that the district court improperly instructed the jury that Marshall's speech was of a matter of public concern. The defendants submit that Marshall's motive was essential to the determination of whether she was speaking out on a matter of public concern and that it was a disputed fact that should have been submitted to the jury through the defendants' tendered instruction concerning motive.

█ As recently reiterated by the United States Supreme Court, "[t]o be protected the speech must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Waters v. Churchill,* ––– U.S. –––, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994), *quoting Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983), *quoting Pickering v. Board of Ed. of Township High School Dist.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968). The question presented by this appeal is whether Marshall's speech was a matter of public concern, as defined in *Pickering* and *Connick.* Whether the speech is a matter of public concern is a matter of law determined by the trial judge, which we review *de novo. Breuer v. Hart,* 909 F.2d 1035, 1039 (7th Cir.1990); *see Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7.

█ We make that determination based on " 'the content, form, and context of a given statement as revealed by the whole record,' " *Smith v. Fruin,* 28 F.3d 646, 651 (7th Cir. 1994) (quoting *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690), but content is the most important factor. *Id.; Belk v. Town of Minocqua,* 858 F.2d 1258, 1264 (7th Cir.1988) ("content is the greatest single factor in the *Connick* inquiry"); *Yoggerst v. Hedges,* 739 F.2d 293, 296 (7th Cir.1984). Motive may play some part in determining whether the speech is of public concern because speech that promotes a purely private interest is not protected. But motive is not questioned in a vacuum. When we examine whether the content, form and context indicate that motive is personal, *see Callaway v. Hafeman,* 832 F.2d 414 (7th Cir.1987), we also examine the speech itself. If the speech concerns a subject of public interest but the *expression* addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern. *See Smith,* 28 F.3d at 651–52. Motive may be relevant, but it is not dispositive. *Glass v. Dachel,* 2 F.3d 733, 741 (7th Cir.1993); *Belk,* 858 F.2d at 1264. It is often the case that those who speak out are also involved in personal disputes with employers and other employees. *See, e.g., Breuer,* 909 F.2d at 1039 ("Wrongdoing may often be revealed to the proper authorities only by those who have some personal stake in exposing wrongdoing."); *Belk,* 858 F.2d at 1264. A personal aspect contained within the motive of the speaker does not necessarily remove the speech from the scope of public concern. *Breuer,* 909 F.2d at 1039 ("fact that these serious allegations arose in the context of what began as a personal dispute does not in itself disqualify from protection all speech on the topics arising from that dispute"). In fact, we have observed that a plaintiff's speech could be characterized as a matter of public concern even if the speaker stands to gain a personal benefit in addition to bringing the wrongdoing to light. *Auriemma v. Rice,* 910 F.2d 1449, 1460 (7th Cir.1990) (*en banc*) ("Even if the plaintiffs themselves viewed their problems as only a personal matter, the test of public concern is more objective."), *cert. denied,* 501 U.S. 1204, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991).

█ Although relations became strained during the year that Marshall observed Weltz' activities, her charges that Weltz made claims for excessive mileage reimbursements, failed to make required inspections, and engaged in partisan politics on County time, were communicated as office concerns, not as concerns that affected only Marshall. Weltz' activities were the type

that result in the misuse of public funds and trust. These were not employment disputes or criticisms of the way that only Marshall's job was affected. Marshall documented the misuses of office that she witnessed and formally brought them to the attention of Plan Commission members. Marshall also brought to light possible violations of the Indiana open door law, a matter entirely of public interest, by informing first the county attorney and then, when no action was taken, Putz' attorney. The district court properly found that as a matter of law Marshall was speaking out on matters of public concern.

■ In a related claim the defendants also argue that their proposed Instruction 14,[1] which concerns motive, should have been submitted to the jury. Because Marshall's speech was of a matter of public concern, the court properly refused to submit the instruction. Once the court determined that Marshall was speaking out on matters of public concern, the jury was to determine the defendants' motivation in terminating Marshall's employment. The defendants' proposed instruction on motive did not accurately state the law in that it indicated that motive was the dispositive factor in determining whether Marshall's speech was protected. Even if the defendants were entitled to an instruction regarding motive, they were required to tender an instruction that correctly stated the law in order to challenge the district court's refusal to use it. *Northbrook Excess & Surplus v. Procter & Gamble*, 924 F.2d 633, 638 (7th Cir.1991).

### III.

■ The defendants launch a general objection to the analysis used by the trial court and argue that as a matter of law Marshall could have been fired for speaking out even on matters of public concern because she was a policymaker/confidential employee. The

precise claim that the defendants are making is not clear. To the extent that they are resuming their argument in their motion for summary judgment, we cannot review the claim because a full jury trial took place. *Watson v. Amedco Steel, Inc.*, 29 F.3d 274 (7th Cir.1994) (appellant cannot challenge the denial of summary judgment after a full trial on the merits). But because Marshall responds to the defendants' argument in the same general manner, we will consider the argument.

■ In essence, the defendants challenge the law as applied through the jury instructions. The statement of law found in Instruction 15, which instructed the jury to find in Marshall's favor if she was terminated for her speech on particular matters, is, in effect, the law after application of the balancing test in *Pickering* and *Connick*. The defendants contend that rather than approaching this case with a *Pickering/Connick* analysis the court should have analyzed it under the line of cases derived from *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Labeled as "political patronage cases," these cases provide that policymakers and confidential employees may be discharged due to their political beliefs. The circuits disagree about the relationship between the *Pickering/Connick* cases and the *Elrod/Branti* cases. Although some circuits discuss these cases as being wholly distinct, *see, e.g., Stough v. Gallagher*, 967 F.2d 1523, 1527–28 (11th Cir.1992), we regard the political patronage cases as a subset of cases concerning discharge in retaliation for the exercise of First Amendment rights. *Heideman v. Wirsing*, 7 F.3d 659, 662 (7th Cir.1993); *Wilbur v. Mahan*, 3 F.3d 214, 219 (7th Cir.1993) (disagreeing with the determination by the Eleventh Circuit that the *Elrod* and *Picker-*

---

1. Defendants' Instruction 14 stated:

 In determining whether the statements made by the Plaintiff which are at issue in this case are protected by the First Amendment, you must take into consideration the motive of the Plaintiff in making the statements or, in other words, the point of the speech in question. If it was the motive of the Plaintiff or the point of the speech to bring wrongdoing to light or to

raise other issues of public concern, because they are of public concern, her speech is protected by the First Amendment. However, if her motive or the point of the speech was to further some purely private interest, such as to retaliate against the Defendants or embarrass the Defendants because of the actions that they took, her statements are not protected by the First Amendment.

*ing* lines of cases cannot be combined). But the relationship between the two types of cases is not implicated by this case. The difficult cases are those in which an employee's speech reflects his or her political associations, for instance when an employee campaigns against or openly supports a political candidate whose beliefs are adverse to the employee's superior. Marshall was not running for office, and she was not seeking to displace her employer with someone of her political beliefs. The evidence did not suggest that Marshall's termination resulted from partisan politics.

The defendants argue that because Marshall was a confidential employee that the *Elrod/Branti* analysis applies and that Marshall could have been fired for her speech. But whether one is a policymaker is not the determinative question in this case. We recently rejected the defendants' position in *Wilbur* in which we stated that "the patronage cases do not ... hold that an individual surrenders *all* his freedom of speech by becoming a confidential or policymaking employee of government." 3 F.3d at 217. We noted that it was "too big a leap" for the district court to infer that "once a public employee is put into the confidential-assistant or policymaker slot, he loses his right of free speech." *Id.* Our cases do not restrict the rights of policymakers to such an extent that they have no First Amendment rights, regardless of the content of their speech. *Id.* The *Branti/Elrod* cases apply when the plaintiff's politics are implicated in the discharge; then the court asks whether the plaintiff is in a policymaking or confidential position. Marshall spoke about Weltz' excessive mileage and failure to conduct inspections. In doing so she was not aspiring towards his position, nor was she attempting to oust one who belonged to a different party or party faction. The defendants do not argue that Marshall's discharge resulted from her political associations; nor do they argue that she supported the wrong candidate for office. Because Marshall's alleged position as a policymaker or confidential employee does not prompt the application of *Elrod* and *Branti*, the district court was correct in applying the balancing test advanced

in *Pickering* and *Connick* before submitting the case to the jury.

## IV.

■■■■ The defendants argue that remarks regarding Carmichael's participation in the events leading up to Marshall's dismissal that were made by Marshall's counsel during closing argument were improper and constituted reversible error. The defendants believe that counsel argued a theory of "conspiracy" when the evidence did not support such an assertion. We give considerable deference to the district court to supervise the arguments of counsel, and it is rare that improper comments made during closing argument rise to the level of reversible error. *Moylan v. Meadow Club, Inc.*, 979 F.2d 1246, 1250–51 (7th Cir.1992). Reversal is warranted only if the remarks depart from the evidence presented and " 'influenced the jury in such a way that substantial prejudice resulted to' the opposing party." *Arcor, Inc. v. Textron, Inc.*, 960 F.2d 710, 713 (7th Cir. 1992) (quoting *Fenolio v. Smith*, 802 F.2d 256, 258 (7th Cir.1986)); *see Slane v. Jerry Scott Drilling Co., Inc.*, 918 F.2d 123, 128 (10th Cir.1990) (court will not reverse on an improper closing argument unless it obviously prejudiced one of the parties); *Gossett v. Weyerhaeuser Co.*, 856 F.2d 1154 (8th Cir. 1988).

Our review of the record reveals that Marshall's counsel did not argue that Carmichael was involved in a conspiracy. No conspiracy instruction was given to the jury. The comments concerning Carmichael were all with respect to evidence elicited during the trial. Weltz and other members of the Plan Commission were appointed by Carmichael, and Carmichael attended the meeting of December 1990. Counsel argued that Carmichael supported his appointees, which was supported by the record. She made no mention of a conspiracy. The defendants' counsel, on the other hand, repeatedly argued that the jury would have to find a "broad-based conspiracy" Tr. at 552, 554–56, 567, 577. The court instructed the jury to find whether Marshall was discharged for her speech regarding the activities of Weltz and the Putz matter. As the defendants state in their

brief, "Carmichael's role was critical to the Plaintiff establishing motivation on the part of the members of the Plan Commission to act in retaliation for the Plaintiff's criticism of Weltz." Far from constituting reversible error, the comments made by counsel were warranted by the evidence that was presented during the trial.

## V.

Accordingly, for the reasons stated herein, the jury verdict for the plaintiff Elizabeth Marshall is affirmed.

AFFIRMED.