Gregory **HENSLEY**, Plaintiff,

v.

**JASPER POLICE DEPARTMENT, Jasper Board of Public Works and Safety, City Of Jasper, William J. Schmitt, Mayor of The City of Jasper, in his official and individual capacity, Juanita Boehm, in her official and indi-**

---

vidual capacity, Richard Gunselman, Police Chief of the Jasper Police Department, in his official and individual capacity, Dubois County Bank and Kenneth Steltenpohl, in his individual capacity, Defendants.

No. EV99–0053–C–B/H.

United States District Court,
S.D. Indiana,
Evansville Division.

Sept. 26, 2001.

Kevin S. Kinkade, O'Leary & Associates, Oakland, City, IN, for plaintiff.

Robert F. Stayman, Ziemer Stayman Weitzel & Shoulders, Evansville, IN, Thomas E. Wheeler, II, Locke Reynolds, LLP, Indianapolis, IN, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BARKER, District Judge.

This matter is before the court on the Motion for Summary Judgment filed by defendants Jasper Police Department, Jasper Board of Public Works, City of Jasper, William Schmitt, Juanita Boehm and Richard Gunselman (hereafter the "City defendants") on November 27, 2000. (Docket Items 82–84). The plaintiff filed his response to the motion on February 21, 2001. (Docket Items 115–120). The City defendants filed their reply brief on April 5, 2001. (Docket Items 130–132).

The court, having considered the motion and being duly advised, now **GRANTS** the motion.

1. Plaintiff's claim that he was denied wages without due process of law found in Count I of his Complaint and his claim for conversion in Count IV were dismissed in that order.

2. The court adopts the facts referenced in the parties' Statements of Material Fact. References to "Material Fact _____" refer to those facts tendered by the parties. Regarding Sections III and IV, supra, the court has fashioned its own findings of fact, which are referred to as "Finding of Fact _____."

## I. Summary of Hensley's remaining claims in this suit:

In the plaintiff's brief in opposition to the City defendants' summary judgment motion (Docket Item 116), Plaintiff defines the legal basis for his claims. In a prior order dated March 23, 2001, we concluded that certain of his claims are barred by the statute of limitations.[1] The remaining claims are distilled as follows:

A. Was Plaintiff terminated from his employment in violation of his First Amendment rights to free speech and right to petition the government for redress of grievances? (Count II of the Complaint.)

B. Was Plaintiff denied continued employment without due process of law? (Count II of the Complaint.)

C. Was Plaintiff deprived of liberty interests without due process? (Count III of Complaint.)

We address each of these issues *seriatum* in light of the facts which relate to each claim.

## II. Was Plaintiff terminated from his employment in violation of his First Amendment right to free speech and right to petition the government for redress of grievances?

### A. Facts:[2]

The court briefly summarizes the facts as follows:

The facts most favorable to the non-moving party and relevant to this issue are found at paragraphs 63 through 143, 148–149 and 153 of the plaintiff's Material Facts, and paragraphs 1, 3, 5, 7, 8, 13, 15, 16, 18, 25, 26, 27, 28, 36, 39, 47, 49, 50, 52, 53, 56A, 56B, 56C, 57, 58, 59A, 59B and 60 of the City defendants' Statement of Material Facts. These facts will not be separately restated in this opinion to further the goal of brevity, but will be referred to as necessary in the text.

The plaintiff, Gregory Hensley ("Hensley"), was a police officer with the City of Jasper. The City devised a new method of distributing the City payroll by electronic transfer to City employees' bank accounts. The City initially undertook this process on a voluntary basis but eventually required electronic transfer of payroll for all employees. Hensley opted not to have his paycheck handled this way, expressing his opposition to the process to several people, including Town Treasurer Juanita Boehm ("Boehm"). Ultimately, out of more than 400 employees, Hensley was the only one who refused to designate a bank account into which his paycheck could be electronically deposited. (Material Fact 27). Because Hensley refused to designate an account, the City deposited his paycheck electronically in an account at the Dubois County Bank. (Material Fact 28). Beginning in October 1999, when Hensley went to the Dubois County Bank to obtain the proceeds of his paycheck, the bank paid him his wages by a cashier's check but deducted a $5.00 fee for the issuance of a cashier's check, consistent with bank policy. (Material Fact 91).

Hensley objected further to these arrangements in conversations with several people, including the local prosecuting attorney. What precisely was said between Hensley, the prosecuting attorney, and the Mayor is in dispute. Thereafter, in his official capacity as a police officer, Hensley began a criminal investigation preparing fifty-two probable cause affidavits to summon defendants into court. On April 1, 1997, twenty-six affidavits were served utilizing standard prosecutor forms charging Town Treasurer Boehm and bank officer Kenneth Steltenpohl with Class D felony theft for each occasion when $5.00 had been withheld from Hensley's weekly paycheck between October 1999 and March 2000. These affidavits were delivered personally by Hensley as the arresting officer to Boehm and Steltenpohl at their places of employment, directing them to appear in court eight days later.

On April 2, 1997, Ms. Boehm, who was quite upset by Hensley's action, filed a formal complaint with the police chief. Mr. Steltenpohl made a similar complaint.

Thereafter the Jasper Board of Public Safety discharged Hensley from his employment as a police officer, for his actions and violations of departmental policies.

### B. Hensley's First Amendment claim:

Hensley contends that his termination from employment was punishment for exercising his First Amendment right to free speech and his right to petition the government for redress of grievances. The City defendants have moved for summary judgment arguing that Hensley is not entitled to any relief because: (1) Hensley's statements did not involve matters of public concern; (2) Hensley's statements did not result in his transfer; and (3) each individual defendant is entitled to qualified immunity.

 Recently, in *Myers v. Hasara*, 226 F.3d 821 (7th Cir.2000), the Seventh Circuit addressed these issues in these words:

The Supreme Court has long held that a public employee maintains a First Amendment right to speak out on matters of public concern even though she works for the government. *See Pickering*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *see also Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). A public employee can be punished for exercising that right only if the facts of the case, as reasonably known to the employer, indicate that the employer's interest in promoting efficiency of public services outweighs the employee's interest in free

speech. *See Waters v. Churchill,* 511 U.S. 661, 668, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994); *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731. Courts after *Pickering* have engaged in a two-part analysis to determine whether the "interests of the [employee], as a citizen, in commenting upon matters of public concern" outweighed the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.*

*Myers,* 226 F.3d at 825–26.

■ Though this two-part analysis involves factual determinations, the required inquiry is actually a question of law. *Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. 1684; *Biggs v. Village of Dupo,* 892 F.2d 1298, 1300 n. 1 (7th Cir.1990). *See also Cliff v. Board of School Com'rs of City of Indianapolis, Ind.,* 42 F.3d 403, 409 (7th Cir. 1994) (the question whether speech relates to a matter of public concern is a question for the judge), and *Dishnow v. School Dist. of Rib Lake,* 77 F.3d 194, 198 (7th Cir.1996) (the balancing of the perspectives of the speaker and his public employer is also one for the judge). We move therefore to that determination.

In *Myers,* the Court of Appeals analyzed the first step in this analysis—whether the employee is making a comment upon matters of public concern—as follows:

In *Hulbert v. Wilhelm,* 120 F.3d 648, 653 (7th Cir.1997), we re-stated the *Pickering* analysis as a three-part inquiry, although still addressing the core concern identified in *Pickering.* We held that the first part of *Pickering* sought to determine (1) whether the speech would be protected if uttered by a private citizen and (2) whether the speech was more than an unprotected "personal employee grievance." *Hulbert,* 120 F.3d at 653. If so, then we would consider the speech to meet the test for speech by a citizen on a matter of public concern.

*See id.* A number of factors are relevant to this analysis including the content, form and context of the remarks, *see Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684, and whether the remarks can fairly be characterized as relating to issues of "political, social, or other concern to the community." *Id.* at 146, 103 S.Ct. 1684.

... It is important to good government that public employees be free to expose misdeeds and illegality in their departments. Protecting such employees from unhappy government officials lies at the heart of the *Pickering* cases, and at the core of the First Amendment. For example, in *Marshall v. Porter County Plan Commission,* 32 F.3d 1215, 1218 (7th Cir.1994), the plaintiff, an employee in the building inspector's office, told the county planning commission that required inspections were not being done and provided a list showing that half of the required inspections had not been performed. The commission took no action, but later fired her in part because of her complaints regarding the building inspections. We held that the activities about which the plaintiff complained "were the type that result in the misuse of public funds and trust. These were not employment disputes or criticisms of the way that only [Plaintiff's] job· was affected." *Id.* at 1219–20. As a matter of law, we found these comments to be about matters of public concern. *Id.* at 1220.

*Myers,* 226 F.3d at 825–26.

■ A statement is characterized as a matter of public concern, and not merely a personal employment grievance, if it can be "fairly considered as relating to any matter of political, social or other concern to the community." *Connick,* 461 U.S. at 146, 103 S.Ct. 1684. When an employee speaks "as an employee upon matters only

of personal interest," the speech is not protected. *Id.* at 147, 103 S.Ct. 1684. To determine whether or not particular speech relates merely to internal workplace issues, the courts must conduct a case by case inquiry, looking to the "content, form and context" of the speech, as revealed by the whole record. *Id.* at 147–48, 103 S.Ct. 1684. Content is the most important of these factors. *Yoggerst v. Hedges,* 739 F.2d 293, 296 (7th Cir.1984). However, the court's inquiry must also take into account "the point of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?" *Linhart v. Glatfelter,* 771 F.2d 1004, 1010 (7th Cir.1985). The mere fact that an employee speaks up on a topic that may be deemed one of public concern does not automatically render his remarks on that subject protected. *Hartman v. Board of Trustees of Community College Dist. No. 508, Cook County, Ill.,* 4 F.3d 465, 471 (7th Cir.1993). In other words, the content and form of the employee's remarks, along with the surrounding circumstances, including the employee's reasons for speaking, are essential factors in determining whether the employer's speech is a matter of public concern. *See Colburn v. Trustees of Indiana University,* 973 F.2d 581, 587 (7th Cir.1992); *Barkoo v. Melby,* 901 F.2d 613, 618–19 (7th Cir.1990); *Egger v. Phillips,* 710 F.2d 292, 317 (7th Cir.1983).

The Court in *Myers* also discussed the test's second prong—the State's interest in efficiency of public services—by referring to discussions in *Kokkinis v. Ivkovich,* 185 F.3d 840, 845 (7th Cir.1999), and *Wright v. Illinois Dept. of Children & Family Services,* 40 F.3d 1492, 1502 (7th Cir.1994). These cases laid out several factors to guide a determination of when, as an employer, the State's interest in efficient operation outweighs the citizen/employee's interest in speaking out.

Seven such factors have been approved by the Seventh Circuit in addressing this issue. Because the *Kokkinis* case involves comments made by an officer about a police department, we rely heavily on its analysis:

In *Caruso v. DeLuca,* 81 F.3d 666 (7th Cir.1996), we noted several factors that should be considered when balancing the employee's First Amendment interests against the government's interest in providing services efficiently:

(1) whether the statement would create problems in maintaining discipline by immediate supervisors or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her daily responsibilities; (4) the time, place, and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision making; and (7) whether the speaker should be regarded as a member of the general public.

*Id.* at 371, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (quoting *Wright v. Illinois Dept. of Children & Family Servs.,* 40 F.3d 1492, 1502 (7th Cir.1994)) (internal quotation marks omitted). With respect to the first two factors, we note that a government employer is allowed to consider "the potential disruptiveness" of the employee's speech. *Caruso,* 81 F.3d at 670–71 (quoting *Waters v. Churchill,* 511 U.S. 661, 680, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion)) (internal quotation marks omitted). "When close working relationships are essential to fulfilling public responsi-

bilities, a wide degree of deference to the employer's judgment is appropriate." *Connick,* 461 U.S. at 151–52, 103 S.Ct. 1684, 75 L.Ed.2d 708. Indeed, "[t]he public employer is not required to wait until those working relationships actually disintegrate if immediate action might prevent such disintegration." *Breuer v. Hart,* 909 F.2d 1035, 1040 (7th Cir.1990).

Deference to the employer's judgment regarding the disruptive nature of an employee's speech is especially important in the context of law enforcement. "[T]here is a particularly urgent need for close teamwork among those involved in the 'high stakes' field of law enforcement. Speech that might not interfere with work in an environment less dependent on order, discipline, and esprit de corps could be debilitating to a police force. Such considerations are permissible in weighing constitutional violations." *Id.* at 1041 (citations omitted); *see also Jefferson v. Ambroz,* 90 F.3d 1291, 1297 (7th Cir.1996). In this respect, we find instructive the Eight Circuit's recognition, in *Tyler v. City of Mountain Home,* 72 F.3d 568, 570 (8th Cir.1995), of the special need for deference to the employment decisions of those responsible for ensuring public safety:

> It has been recognized that a police department has a more significant interest than the typical government employer in regulating the speech activities of its employees in order "to promote efficiency, foster loyalty and obedience to superior officers, maintain morale, and instill public confidence." [*Shands v. City of Kennett,* 993 F.2d 1337, 1344 (8th Cir.1993), *cert. denied,* 510 U.S. 1072, 114 S.Ct. 880, 127 L.Ed.2d 75 (1994) ] (citations omitted). "Because police departments function as paramilitary organizations charged with maintaining pub-

lic safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer." *Tindle v. Caudell,* 56 F.3d 966, 971 (8th Cir.1995). The public safety employer's determinations of both the potential for disruption as a result of the speech, as well as the employer's response to the actual or perceived disruption, are entitled to "considerable judicial deference." *Shands,* 993 F.2d at 1345.

*Kokkinis,* 185 F.3d at 845–46.

### C. Analysis:

■ In the case at bar, the relevant speech consists of Hensley's comments to the Mayor and his preparation and service of probable cause affidavits alleging theft by city and bank officials. (Material Facts 77, 80, 123–126, 128). Hensley contends that his conduct was based on his concern that city and bank officials were committing the crime of theft.

With respect to the "content" of Hensley's communications involving the 26 charging affidavits against Boehm and Steltenpohl, respectively, each reflecting an instance in which $5.00 was deducted from Hensley's paycheck, (Material Facts 123, 126), it is clear that Hensley's communications did not apply to any criminal activity other than that of which Hensley himself claims to be victim. Although an allegation of "theft" generally can be "fairly considered as relating to any matter of ... concern to the community," *Connick,* 461 U.S. at 146, 103 S.Ct. 1684, here Hensley was the only victim. Therefore, in assessing the "content" of Hensley's communications, we conclude that they did *not* pertain to matters of public concern, only to his private concerns.

With respect to the "form" of the communications, they consisted of oral com-

ments to the Mayor and to the Treasurer and the issuance of the written probable cause affidavits to two of the defendants and to the deputy prosecuting attorney. (Material Facts 125–33). In one sense, the "form" of the communication to the deputy prosecuting attorney might be said to be an attempt to bring wrongdoing to light in a public way in order to prompt official action. In deciding whether the delivery of the affidavits to Boehm and Steltenpohl was a form of communication intended to bring this matter to public attention, we are less certain. Hensley apparently followed City procedures with regard to the preparation and issuance of the affidavits. (Material Fact 126). However, the delivery of the affidavits to Boehm and Steltenpohl, especially when it occurred prior to the Prosecutor's decision to prosecute the claims of theft, was not calculated to bring matters to the attention of *the public.* Had Hensley delivered the affidavits *only* to the prosecuting attorney, the public official who had responsibility for bringing the charges, Hensley's actions could be construed reasonably as having been calculated to bring the matter to public attention. However, Plaintiff's delivering the affidavits to Boehm and Steltenpohl was not necessary to bring the matter to the public's attention.

We examine the "context" of the speech in the light most favorable to Hensley: he was the only employee, out of some 400 with the City of Jasper, who failed to voluntarily or at least willingly participate in a newly-enacted procedure for paying City employees. (Material Facts 25, 27 and 63–83). There is no evidence of similar challenges to the City defendants based on these payroll procedures by any other persons or groups of persons. Thus, in terms of context, again we conclude that Hensley's actions did not involve matters of public concern, involving instead a purely private dispute over how Hensley would be paid.

In analyzing together the content, form and context issues in this case, we come readily to the opinion that Hensley's communications were not about matters of public concern, rather about matters of personal concern.

### D. Hensley's claim regarding petitioning the government for redress of grievances:

Hensley has characterized his actions as "Petitioning the Government for Redress of Grievances." However, as Hensley concedes in his brief, courts analyze an alleged violation of the petition clause in the same manner as any other alleged violation of the right to engage in free speech. *Phares v. Gustafsson,* 856 F.2d 1003, 1009 (7th Cir.1988); *Belk v. Town of Minocqua,* 858 F.2d 1258, 1262 & n. 5 (7th Cir.1988). Therefore, Hensley's characterization of his actions of petitioning the government for redress of grievances does not change our analysis or our conclusions.

### E. Conclusion:

Because Plaintiff's actions did not involve matters of public concern, we need not address whether the doctrines of *res judicata* or collateral estoppel apply here. Neither do we need to address whether Henley's actions in serving the affidavits caused his termination, or whether the individual defendants are entitled to qualified immunity. Hensley's claim that his First Amendment rights were violated by his suspension or termination from employment is not well founded because the matters which he raised which gave rise to his termination were purely personal grievances, not matters of public concern. His termination cannot be said to have occurred in violation of his First Amendment rights, even if he was, in fact, terminated because of the communications he

had with Boehm and Steltenpohl based on his delivery of the affidavits to them.

### III. Was Plaintiff Denied Continued Employment Without Receiving Due Process?

**A.** We glean the following facts from the parties' submissions:

1. Based on the complaints filed by Boehm and Steltenpohl on April 3, 1997, Hensley was called into the office of Police Chief Richard Gunselman ("Gunselman"), was relieved of his badge, gun and equipment and was informed that he was being suspended with pay pending an investigation into the matter. (Hensley Depo., p. 203–04).

2. During this meeting, Hensley was informed that his having provided courtesy copies of the probable cause affidavits to Boehm and Steltenpohl constituted violations of department rules. In addition, Chief Gunselman stated to Hensley that he was suspended for insubordination because, according to Gunselman, he and Mayor William Schmitt ("Schmitt") had told Hensley on March 14, 1997, not to file any such affidavit with the Prosecutor. (City Defendants' Answer, Count I at 12(J)). In addition, Hensley was accused of falsely arresting Boehm and Steltenpohl, filing theft charges against them in court, and not filing a police report. (Fritch Depo., p. 117; Hensley Depo. p. 204–07; Ex. I).

3. Following an investigation, and in accordance with I.C. 36–8–3–4, on April 17, 1997, Chief Gunselman requested that the City of Jasper Board of Public Works and Safety discharge Hensley for violations of departmental policy. (Hensley Depo., p. 212; Exhibit "A(C–1)").

4. Specifically, Gunselman requested that Hensley be discharged for the following reasons:

 (a) "The Officer prepared and on April 1, 1997, while on duty and in uniform, personally served twenty-six (26) affidavits charging the crime of theft.... Each of these affidavits is captioned as a criminal charge alleging that the named defendant exerted unauthorized control over the Officer's property.... The affidavits concluded with the statement that the named defendant has been cited into the Court at 11:00 a.m. on April 9, 1997."

 "Prior to April 1, the Dubois County Prosecuting Attorney had notified the Officer that no criminal charges on the facts covered by the affidavits would be approved for filing. The Officer therefore knew at the time he prepared and served the affidavits ... that criminal charges had been refused by the Prosecutor and would not be approved for filing...." (Hensley Depo., Exhibit "A(C 1)", pp. 1–2).

 (b) "The Officer placed, maintained and utilized a brake light cut-out system on his assigned departmental vehicle which was unsafe and in violation of Jasper Police Department Rules & Regulations and in violation of a written order issued by Chief Richard A. Gunselman." (Hensley Depo., Exhibit "A(C 1)", p. 3).

5. On April 17, 1997, Chief Gunselman served on Hensley a "Notice of Charges and Right to a Hearing." (Hensley Depo., p. 213; Exhibit "A(C–2)").

6. In response, Hensley requested a hearing before the Board of Public Works and Safety which was comprised of Schmitt, Prosecutor Brown, and City Council Member Victor Knies. (Hensley Depo., pp. 213–14).

7. On May 7, 1997, Hensley, through his attorneys, sought the recusal of Schmitt and Prosecutor Brown from the Board, based upon their personal involvement in the case. By agreement of Hensley's attorney, the remaining member of

the Board, Victor Knies ("Knies"), heard the matter. (Hensley Depo., p. 214; Exhibit "D").

8. At no time did Knies ever make it known to Hensley or his attorney during the hearing that he was a friend of Steltenpohl and Schmitt. (Knies Depo., pp. 24–25; Steltenpohl Depo., pp. 134–37). According to Steltenpohl, Knies had discussed with Steltenpohl the proposed termination of Hensley prior to the hearing. (Steltenpohl Depo., pp. 134–35).

9. A ten-hour hearing was held before Knies on June 11, 1997. At this hearing, Hensley was represented by Leo T. Blackwell, an attorney hired by the FOP. Chief Gunselman was also represented by counsel. Both parties presented witnesses and evidence and tendered proposed findings of fact, conclusions of law, and orders. (Hensley Depo., pp. 214–15).

10. Chief Gunselman repeatedly testified (ten times, apparently) at the hearing before the Board that Schmitt had told Hensley on March 14, 1997, that Prosecutor Brown had stated that Boehm was not committing a crime, there was no criminal intent on her part and that no charges would be filed by his office. (Transcript of Proceedings, Vol. I, pp. 49, 51, 94, 99, 111–12, 121–22, 146, 154).

11. Chief Gunselman later acknowledged, however, that he knew that Prosecutor Brown had not notified Hensley of his intention not to file charges. Chief Gunselman acknowledged that to his knowledge Prosecutor Brown had never spoken directly to Hensley about the matter. (Transcript of Proceedings, Vol. I, pp. 56, 99, 152; Gunselman Depo., pp. 132, 212).

12. Schmitt testified on four occasions during the hearing before the Board that during the March 14, 1997, meeting, he had told Hensley that Prosecutor Brown told him (Schmitt) that, because there was no criminal intent on Boehm's part, no

charges would be filed through his office. (Attachment 3, Transcript of Proceedings, Vol. II, pp. 13, 18, 24, 28).

13. However, in his January 6, 2000, deposition, Schmitt testified that, in fact, he *did not* tell Hensley during the March 14, 1997, meeting that he had talked to Prosecutor Brown from whom he learned that because there was no criminal intent no charges would be filed. (Schmitt Depo., pp. 222, 225).

14. Knies knew that Hensley's hearing before the Board was being surreptitiously videotaped; however, he did not notify anyone of that fact at the hearing. (Attachment 4, Knies Depo., pp. 31–34).

15. On June 23, 1997, Knies issued Findings of Fact, Conclusions of Law, and Decision (Knies Depo., p. 45), to the following effect:

(a) That the arrest and charging of Boehm and Steltenpohl by Hensley violated departmental policies prohibiting personal involvement and favoritism in law enforcement and failed to follow departmental procedures, holding that "[t]he Officer's behavior described in Finding 11 violates Rules 8(d)(1), Rule 3(b), and Rule 2(A)1(d) of the Jasper Police Department." (Hensley Depo., p. 215; Exhibit "B", Findings 11 and 15).

(b) That "[t]he Officer's installation of a brake light cut out switch on his take home police car violates Rule 13(e)3 and 2(A)1(d), and an order concerning the addition of personal equipment to take home police cars given to all officers given in the October 21, 1996 Department meeting." (Hensley Depo., p. 215; Exhibit "B", Findings 16–17).

(c) That Officer Hensley had frequently been disciplined and suspended dur-

ing his employment with the Department. (Hensley Depo., p. 215; Exhibit "B", Finding 18).

In conclusion, Knies held: "Based on the preceding findings of fact and conclusions of law, the Board of Public Works and Safety acting through its member Victor J. Knies, determines that Officer Gregory R. Hensley should be and therefore shall be discharged from the Jasper Police Department." (Hensley Depo., p. 215, Exhibit "B", Decision).

16. Following this adverse employment decision, Hensley hired new attorneys and appealed the Board's decision to the Dubois Superior Court. (Hensley Depo., p. 216).

17. A special judge was appointed who presided at a hearing on January 30, 1998, to determine from the record whether to receive any new evidence. (Hensley Depo., pp. 216–17).

18. Hensley was not permitted as part of his appeal to introduce new evidence, including any evidence to substantiate his claim that he did not receive a fair and impartial hearing. Nor was he permitted to attempt to prove that Gunselman and Schmitt presented false testimony at the hearing. (Hensley Depo., pp. 171–72).

19. Following additional briefing, on August 19, 1998, the special judge issued "Findings of Fact, Conclusion of Law, & Decision," ruling that the Board's decision was supported by substantial evidence and upholding the discharge. Specifically, Special Judge Roell stated as follows:

5. Petitioner has not supported his claim of bias by the Board with credible evidence. The decision of the Board is *prima facie* correct, pursuant to Ind. Code § 36–8–3–4(h), and Petitioner has not shown otherwise....

 \* \* \* \* \* \*

8. The Findings of Fact of the Board as adopted on June 23, 1997, are each supported by substantial evidence in the record of proceedings before the Board. Those findings are, therefore, neither arbitrary, capricious, or unsupported by substantial evidence.

9. Petitioner failed to carry his burden in his challenge to the Findings of Fact of the Board relative to the arrest of Juanita Boehm and Kenneth Steltenpohl.... The Board's Findings of Fact and Conclusions of Law in applying its regulations governing personal involvement in arrests, Rule 8(D), was not clearly erroneous, and was supported by substantial evidence. It should, therefore, be affirmed.

(Hensley Depo., p. 217; Exhibit "C", Conclusions of Law 5, 8–9).

20. No appeal was taken from Judge Roell's decision which is now final and binding. (Hensley Depo., p. 218).

**B. Hensley's Due Process claim:**

Plaintiff alleges "he was denied continued employment by the City, the Police Department and the named individuals without the benefit of constitutionally proper due process." (Plaintiff's brief, p. 14).

 Generally, Due Process requires that before a government body acts to deprive a person of a constitutionally protected interest in life, liberty, or property, it must conduct some type of hearing accompanied by notice and an opportunity to be heard. *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Swanson v. Village of Lake in the Hills*, 962 F.2d 602, 604 (7th Cir.1992). The extent and type of hearing requires a balancing of (1) the private interest in retaining employment; (2) the risk of an erroneous deprivation of the interest through the procedures used, and

the probable value, if any, of additional procedural safeguards; and (3) the government's interest, including the function involved and the burdens that additional procedures would entail. *Loudermill,* 470 U.S. at 542–43, 105 S.Ct. 1487; *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Swanson,* 962 F.2d at 604.

The first issue to be resolved is whether Hensley has a constitutionally protected interest in "property"[3]—that is, his job.

The City defendants concede that Hensley, a police officer for the City of Jasper, had a constitutionally protected property interest in his job.[4] The State of Indiana has enacted a statute (I.C.36–8–3–4) which provides that a member of an Indiana municipal police department holds office or grade until dismissed or demoted by the appropriate municipal safety board for specific reasons. This statutory tenure protection is sufficient to establish that Hensley had a protected property interest in his job as a police officer for the City.

▇▇▇▇ Next, we address the matter of Hensley's pre-termination rights. Before a person may be deprived of a constitutionally protected property interest in his public employment, due process requires that a pre-termination hearing be held. *Loudermill,* 470 U.S. at 542, 105 S.Ct. 1487. The scope of that hearing depends on the other pre- and post-termination procedures available to the employee; where, for example, there is the opportunity for full administrative review once a termination decision has been reached, the pre-termination hearing can be somewhat truncated. *Id.* at 545, 105 S.Ct. 1487. It need only "be an initial check against mistaken decisions—essentially, a determina-

tion of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 105 S.Ct. 1487. Its essential features consist simply of the due process staples: notice and an opportunity to respond to the charges. *Id.; see also Chaney v. Suburban Bus Div. of Regional Transp. Authority,* 52 F.3d 623, 629–30 (7th Cir.1995); *Panozzo v. Rhoads,* 905 F.2d 135, 138 (7th Cir.1990).

▇▇▇▇ In this case, Hensley was provided with two separate proceedings by which he was able to challenge the loss of his job: first, pursuant to I.C. 3–8–3–4, the hearing conducted on June 11, 1997, before Knies, prior to Hensley's termination on June 27, 1997. (Findings of Fact 5–15).

Hensley argues that he was denied due process at this hearing because, during breaks in the hearing, his conversations with his counsel were surreptitiously recorded; because the hearing officer was prejudiced; and because two witnesses knowingly presented false testimony against him.

▇▇▇▇ The facts in the light most favorable to the plaintiff suggest that there is considerable substance to these three contentions. (Findings of Fact 8, 10–14). If true, we must decide whether there resulted a denial of due process in the pre-deprivation proceedings. As *Loudermill* suggests, *pre-termination* hearings may be "truncated" if post-deprivation proceedings are adequate. "Notice" and an opportunity to be heard are all that is required of the *pre-termination* hearing. Here, there clearly was notice and an opportunity to be heard. The hearing lasted ten hours, in fact. But was the hearing officer

---

**3.** This analysis deals with Hensley's claim that he was denied employment as a police officer. His claim that he was denied a "liberty" interest is addressed in Section IV of this opinion.

**4.** As discussed, *infra* at Section IV, the City does not concede that Hensley has a liberty interest at stake in this proceeding.

neutral? A recent Seventh Circuit opinion, *Schacht v. Wisconsin Dept. of Corrections,* 175 F.3d 497 (7th Cir.1999), clearly mandates neutrality on the part of the hearing officer:

> No matter how complete the panoply of procedural devices which protect a particular liberty or property interest, due process also requires that those procedures be neutrally applied.

*Id.* at 503 (citing *Ciechon v. City of Chicago,* 686 F.2d 511, 517 (7th Cir.1982)).

 It is axiomatic that due process guarantees include the right to an unbiased decision-maker. *Id.* at 502 (citing *Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)). As stated by the Seventh Circuit in *Ryan v. Illinois Dept. of Children and Family Services,* 185 F.3d 751 (7th Cir.1999):

> Due process requires that, prior to termination, an employee be given the chance to tell her side of the story, and that the agency be willing to listen. Otherwise, the "opportunity to respond" required by *Loudermill* is no opportunity at all.

*Id.* at 762 (internal cites omitted).

A plaintiff who can adduce evidence that a decision had already been made before any hearing was held, thereby making the process a sham, is entitled to go forward with a procedural due process claim. *Id.* (citing *Levenstein v. Salafsky,* 164 F.3d 345, 351–52 (7th Cir.1998)). Plaintiff has brought forward some evidence in that regard. Specifically, evidence that the hearing officer:

a. was a friend of the two main "prosecuting witnesses," including Schmitt,

and did not disclosure that friendship to Hensley (Finding of Fact 8);

b. discussed the proposed termination of Hensley with a witness prior to the hearing (Finding of Fact 8);

c. signed off on proposed findings of fact and conclusions of law which had been prepared by someone else for him (Finding of Fact 15); and

d. allowed what has been shown to be false testimony by Schmitt to be admitted and accepted that testimony as true (Findings of Fact 10–13).

While ultimately these facts may not all be proven to be true, at this stage of the proceedings, we conclude that Plaintiff has demonstrated that the decision-maker in this pre-termination hearing was not neutral and that his rights to procedural due process may have been impaired in these ways at his pre-deprivation hearing.[5]

 Regarding Hensley's post-termination rights, the City defendants argue that notwithstanding any deficiencies in the pre-termination hearing held in this case, the plaintiff was given additional process when his pre-termination hearing was reviewed by an Indiana trial court after his discharge. That might be persuasive except for the fact that he was not allowed to introduce any new evidence at the hearing before the Indiana trial court (Finding of Fact 18).[6] Accepting that claim as true and accepting also the fact that the hearing held by the Indiana trial court was a review of the record and not *de novo* review, we come quickly to the view that Plaintiff's post-termination hearing did not allow him the opportunity to adequately

---

**5.** Plaintiff has not specifically argued that he has been deprived of substantive due process.

**6.** The decision by Special Judge Roell dated August 19, 1998, indicates at Conclusion of Law 5 that "[Hensley] has not supported his claim of bias by the Board with credible evidence." This indicates to us that Plaintiff was given the opportunity to present evidence at the hearing. However, Hensley's proposed finding of fact alleges he was not allowed to do so, and defendants did not dispute that allegation.

challenge the bias of the decision-maker. A post-termination hearing which does not allow a challenge to the bias of the decision-maker could be defective process in that it was not "neutrally applied." We hold, therefore, that a genuine issue of fact exists concerning whether Plaintiff's pre- and post-termination hearings were conducted by a decision-maker who was "neutral." This issue must be resolved at trial, unless as discussed below, the doctrines of *res judicata* or collateral estoppel prohibit the plaintiff from further challenge.

## C. The doctrines of *res judicata* or collateral estoppel

The City defendants argue in their brief that notwithstanding any deficiencies in the pre- and post-termination hearings given to Plaintiff, the doctrines of *res judicata* and collateral estoppel prohibit Plaintiff from further litigating this issue before this court. They argue that after his pre-termination hearing, Plaintiff was allowed post-termination judicial review. (Findings of Fact 16–20). Hensley's failure to appeal the Indiana trial court's decision (Finding of Fact 20), the City defendants argue, bars him from challenging further both the discharge and the pre-termination procedures he received before the Board of Public Works and Safety. (City defendants' brief, p. 17).

■ The basic principles of *res judicata* were explicated by Judge Cudahy in *Torres v. Rebarchak*, 814 F.2d 1219, 1222 (7th Cir.1987), as follows. Section 1738 of Title 28 commands that a federal court give the judgments of a state court "the same full faith and credit … as they have by law or usage in the courts of such State…." 28 U.S.C. § 1738; *see Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Stated otherwise, a "state judgment must be given the same *res judicata* effect in federal court that it would be given in the court of the rendering state." *Torres*, 814 F.2d at 1222. Whether the plaintiff's claims in this action are barred, therefore, turns upon the preclusive effect of the earlier state judgment under the law of Indiana.

■ Indiana law provides two separate doctrines whereby a prior judgment bars litigation in a subsequent case: claim preclusion and issue preclusion. *Watson Rural Water Co., Inc. v. Indiana Cities Water Corp.*, 540 N.E.2d 131, 135 (Ind.Ct.App. 1989).[7] Claim preclusion bars "a subsequent action *on the same claim* between the same parties or those in privity with them." *In re Marriage of Moser*, 469 N.E.2d 762, 765 (Ind.Ct.App.1984) (emphasis in original; footnote omitted).

■ According to Indiana law, which was summarized in *Leal v. Krajewski*, 803 F.2d 332, 334 (7th Cir.1986), claim preclusion flows from the following four factors: (1) a judgment from a court of competent jurisdiction, (2) on the merits, (3) in a suit between the same parties, in which (4) the matter at issue was, or might have been, determined in the former suit. Rather than a claim or a cause of action, therefore,

---

7. Indiana courts occasionally call these doctrines "estoppel by judgment" and "estoppel by verdict," respectively, *Watson*, 540 N.E.2d at 135. Some courts use the phrase *"res judicata"* only to mean "claim preclusion." *See generally* 18 Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 4402, at 6 (1981) (discussing the varying terminology used to describe these doctrines). For clarity we will use "claim preclusion" and "issue preclusion."

we must decide whether there is a coincidence between the matters at issue in this case and the previous litigation.

■ Indiana's formulation of a matter at issue is more narrow than our federal rule, under which a single cause of action consists of " 'a core of operative facts' which give rise to a remedy," *In re Matter of Energy Co-op., Inc.,* 814 F.2d 1226, 1230–31 (7th Cir.), *cert. denied,* 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 593 (7th Cir.1986)). With regard to claim preclusion, "[e]very [matter] which was within the issues, and which, under the issues, might have been proved, will be presumed to have been proved and adjudicated." *Peterson v. Culver Educational Foundation,* 402 N.E.2d 448, 460 (Ind.Ct.App.1980) (quoting *Town of Flora v. Indiana Service Corp.,* 222 Ind. 253, 53 N.E.2d 161 (1944)).

■ Issue preclusion bars the relitigation of "a *particular issue,* which was adjudicated in [a] prior action." *Moser,* 469 N.E.2d at 765 (emphasis added). For issue preclusion to apply, however, the issue in the subsequent case must have been "actually litigated and determined" in the prior litigation. *Id.* at 766. In other words, the determination of the *issue* must have been essential to the court's determination in the prior action. *Watson,* 540 N.E.2d at 137. If the plaintiff had a "full and fair opportunity" to litigate the issue, any party may use the prior litigation as a bar against the plaintiff's relitigation of that issue in a subsequent proceeding. *Sullivan v. American Cas. Co. of Reading, Pa.,* 605 N.E.2d 134, 139 (Ind.1992).

In the case at bar, there are three claims before the court. Counts I and III of the Complaint allege that the process used by the City defendants to terminate Plaintiff was deficient. Count II alleges that termination of his employment was based on an improper reason.

■ Addressing the termination issue first (Count II), it is obvious that the judgment of the Dubois Superior Court filed August 19, 1998, is a judgment of a court of competent jurisdiction. I.C. 36–8–3–4(h)(j) provides that decisions of the safety board may be appealed to "the court," and that a final decision by the court may be appealed by either party. The findings of the Dubois Superior Court in this case were not appealed and thus constitute a final judgment.

The state court judgment was on the merits, dealing with the reasons for Plaintiff's termination from his job; the judgment was not the result of a default or other non-merits resolution. As to the similarity of parties, the state court suit was between the plaintiff and the City of Jasper, similar to this federal litigation in which the City is one of the defendants.[8] Finally, the matter at issue in the state court case was whether Plaintiff was properly terminated because of his actions involving his service of warrants on Boehm and Steltenpohl: whether his termination resulted from the fact that his actions violated police policy, or whether his termination was in retaliation for expressing concern about City payroll procedures, or whether Hensley was justified in requesting theft charges to be filed. All are matters which were "within the issues, and which under the issues, might have been proved." *Peterson,* 402 N.E.2d at 460. The suit before our court and the suit before the Dubois Superior Court deal with a common set of facts-the service of warrants by Hensley on Boehm and Steltenpohl. From this we conclude that because Hensley's claim that he was improperly discharged satisfies all four elements

---

**8.** The fact that additional defendants have been added to this suit does not change the fact that Hensley and the City were parties to the Dubois Superior Court claim.

of the Indiana test, it is barred by the Indiana doctrine of *res judicata* or claim preclusion.

Whether Plaintiff's claim that he was denied property or liberty interests without due process of law is also barred by claim or issue preclusion is a more difficult determination. It is clear to us that Plaintiff's pre-termination hearing did not deal with due process denials. However, the Dubois Superior Court findings do encompass Plaintiff's due process arguments. For example, the state court's Conclusion of Law 5 states:

> Petitioner has not supported his claim of bias by the Board with credible evidence. The decision of the Board is *prima facie* correct, pursuant to Ind. Code § 36–8–3–4(h), and Petitioner has not shown otherwise. The Court, therefore, concludes the decision of the Board is correct.

From this, it appears that Plaintiff's claim that he was denied due process because he was denied a neutral decision-maker is a matter that was "within the issues, and which, under the issues, might have been proved." Under Indiana law, therefore, this issue must be presumed to have been proved and adjudicated.

Has the plaintiff rebutted this presumption? We have previously found as a fact that the plaintiff was not allowed to present evidence concerning the bias of the hearing officers in the proceedings before the Dubois Superior Court. (Finding of Fact 18). Consequently, a genuine issue of fact exists as to whether the post-termination proceedings, *in this particular case,* comported with the due process protections the Indiana statute intends to provide when it allows a review of safety board decisions. However, a disputed fact does not preclude the entry of summary judgment unless the fact is *material.* If

we assume that the state trial judge did, in fact, preclude evidence from being considered on the issue of the hearing officer's bias, we must determine whether that makes any difference.

The fourth element of the *res judicata* test requires us to decide whether the matter at issue "was or *might have been* determined in the former suit." Clearly Plaintiff could have raised and perhaps did raise the issue of the hearing officer's bias before the Dubois Superior Court. If he failed to present such evidence in a proper manner, the post-termination hearing would not necessarily be constitutionally deficient. Nor would the Superior Court Judge's arguably improper ruling excluding tendered evidence render the hearing constitutionally deficient, since the plaintiff would have had the opportunity to make an offer of proof[9] and to appeal the decision of the Superior Court. Thus, we are of the opinion that even if a Superior Court judgment erroneously excluded evidence, such an exclusion does not render constitutionally deficient the due process protections provided by the Indiana statute.

The decision of the Dubois Superior Court in this case was:

a. a judgment from a court of competent jurisdiction;

b. addressing the merits, and not based on default or other technical basis;

c. resolving a dispute between the same parties (Hensley and the City of Jasper); and

d. in which

 (1) the reason for Hensley's termination; and

 (2) the due process requirement of neutrality of the hearing officer were or might have been determined.

---

9. *See* Indiana Rule of Evidence 103(a)(2).

As such, all four elements of Indiana's doctrine of *res judicata* or claim preclusion are present here, and Indiana courts would therefore bar the present suit. Similarly, under 28 U.S.C. § 1738, we are compelled to conclude that this suit in federal court also is barred by the doctrine of *res judicata* or claim preclusion and must be dismissed.

## IV. Was Plaintiff deprived of his liberty interests without due process of law?

Finally, we consider the issue of whether Plaintiff suffered a loss of his liberty interests without due process as a result of defendants' actions, as set out in Count III of his Complaint.

■■■■ In *Conwell v. Beatty*, 667 N.E.2d 768 (Ind.Ct.App.1996), the Indiana Court of Appeals, citing *Lawson v. Sheriff of Tippecanoe County, Ind.*, 725 F.2d 1136 (7th Cir.1984), held that:

[T]he courts have found a deprivation of liberty when the employee was fired for a publicly announced reason that impugned his moral character. The concept of liberty in Fourteenth Amendment jurisprudence has long included the liberty to follow a trade, profession or other calling. This liberty must not be confused with the right to a job; states have no constitutional duty to be employers of last resort; but if a state excludes a person from a trade or calling, it is depriving him of liberty, which it may not do without due process of law. And when a state fires an employee for stated reasons likely to make him all but unemployable in the future, by marking him as one who lost his job because of dishonesty or other job-related moral turpitude, the consequences are so nearly those of formally excluding him from his occupation that the law treats the state's action the same way, and insists that due process be provided.

*Conwell*, 667 N.E.2d at 777–78 (citing *Lawson*, 725 F.2d at 1138–39).

■■ Although a dispute may exist about whether Hensley's firing impugned his moral character, or whether he is truly precluded from following his trade or profession, we do not view an inquiry into these areas as necessary. As we have previously held, Hensley is precluded from raising the issue of whether he was deprived of this liberty interest without due process of law because the issue of whether he was *deprived without due process of law* (because the hearing officer was not neutral) was raised or might have been raised and resolved in the state court proceeding. Either the doctrine of *res judicata* or the doctrine of claim preclusion might apply here because Special Judge Roell specifically addressed the issue of whether the hearing officer was biased. We infer therefore that the issue of the hearing officer's bias could well have been before the Dubois Superior Court.

Because Special Judge Roell specifically addressed this issue in his findings, the doctrine of issue preclusion applies to this claim. Whether Hensley was denied any constitutionally protected liberty or property interest without due process of law because of hearing officer bias was a matter before the Dubois Superior Court and was decided adversely to Plaintiff. We note again that no appeal was taken from the Dubois Superior Court's judgment. For the reasons explicated above, the principles of issue preclusion prohibit this court from reconsidering this issue.

## V. Conclusion:

The Court has resolved Plaintiff's three remaining claims as follows: his claim that he was terminated in violation of his First Amendment rights to freedom of speech and to petition the government for redress of grievances fails because his communica-

tions pertained to personal grievances and not matters of public concern.

Regarding his claims for the denial of his employment and of his liberty interest in his occupation fail because Indiana's doctrines of claim and issue preclusion prohibit him from raising those issues again before this court. The Indiana statutory scheme for appeal from the safety board findings after his termination allowed Hensley the opportunity to raise the issue of the bias of the hearing officer. He did not avail himself of that opportunity, or in any event, he failed to appeal that decision through the Indiana Court of Appeals. Therefore, a final judgment of a court of competent jurisdiction, rendered on the merits in a case between identical parties to this action, considered the issue of whether Plaintiff was denied a neutral and unbiased hearing officer and resulted in a decision by the Dubois Superior Court that was adverse to Plaintiff. That final judgment entered by the state court precludes further review in this court. For all these reasons, the City Defendants' Motion for Summary Judgment is **GRANTED**.